[No. 6257. Decided July 16, 1906.]

JOHN Y. TERRY, *Respondent*, v. KING COUNTY *et al.,*
*Appellants*.[1]

STATUTES — CONSTITUTIONAL LAW — CORPORATE POWERS — PRIVIL-
EGES—SPECIAL ACTS—MUNICIPAL CORPORATIONS. Laws 1903, p. 209,
conferring upon certain counties and cities the power to creat in-
debtedness for armory sites not theretofore authorized, confers cor-
porate powers, within the meaning of Const., art. 2, § 28, prohibiting
the legislature from enacting any private or special laws for the
granting of corporate powers or privleges, since said section applies
to powers conferred on municipal as well as private corporations.

SAME—SPECIAL LAWS—CORPORATE POWERS AND PRIVILEGES. Laws
1903, p. 209, ch. 115, appropriating certain sums for the construction
of armories in three specified cities, and authorizing such cities, and
the counties wherein they are located, to incur indebtedness and
issue bonds for the purpose of purchasing sites and assisting in the
construction of armories, which are to belong to the state, is a spe-
cial act conferring corporate powers or privileges on such municipal
corporations, in violation of Const., art. 2, § 28.

Appeal from a judgment of the superior court for King
county, Griffin, J., entered March 29, 1906, in favor of the
plaintiff, a taxpayer, upon overruling a demurrer to the com-
plaint, in an action to enjoin a county from issuing bonds for
the construction of an armory. Affirmed.

*Kenneth Mackintosh, R. W. Prigmore,* and *Wm. E. Mc-*
*Clure,* for appellants, contended *inter alia,* that "corporate
powers" as used in the constitution has reference to the usual
powers conferred upon private corporations. *Jones v. Haber-*
*sham,* 107 U. S. 174, 2 Sup. Ct. 336, 27 L. Ed. 401; *State*
*ex rel. Knisely v. Jones,* 66 Ohio St. 453, 64 N. E. 424, 90
Am. St. 592; *County of Tipton v. Locomotive Works,* 103
U. S. 523, 26 L. Ed. 340; *Pierce v. Kimball,* 9 Greenleaf
54, 23 Am. Dec. 537; *Town Council of Summerville v. Press-*
*ley,* 33 S. C. 56, 11 S. E. 545, 26 Am. St. 659, 8 L. R. A.
854. The erection of an armory in King county is a local

[1] Reported in 86 Pac. 210.

benefit, authorizing the enactment of the law in question. 1 Desty, Taxation, §§ 8, 59; *Goddin v. Crump,* 8 Leigh (Va.) 120; *County of Mobile v. Kimball,* 102 U. S. 691, 26 L. Ed. 238; *Folsom v. Township,* 96, 159 U. S. 611, 16 Sup. Ct. 174, 40 L. Ed. 278; *Atlantic Trust Co. v. Darlington,* 63 Fed. 76; *Hasbrouck v. Milwaukee,* 13 Wis. 42, 80 Am. Dec. 718; *Burr v. Carbondale,* 76 Ill. 455; *Livingston County v. Darlington,* 101 U. S. 407, 25 L. Ed. 1015; *Chicago etc. R. Co. v. Smith,* 62 Ill. 268, 44 Am. Rep. 99; *Livingston County v. Weider,* 64 Ill. 427; *Lund v. Chippewa County,* 93 Wis. 640, 67 N. W. 927, 34 L. R. A. 131; *Clallam v. Saginaw,* 50 Mich. 7, 14 N. W. 677; *Bryant v. Palmer,* 152 N. Y. 412, 46 N. E. 851; *Merrick v. Inhabitants of Amherst,* 12 Allen 500; *Marks v. Trustees of Purdue University,* 37 Ind. 155; *Bright v. McCullough,* 27 Ind. 223; *Palmer v. Stumph,* 29 Ind. 329; *Cash v. Auditor of Clark County,* 7 Ind. 227; *Stocking v. State,* 7 Ind. 326. The constitution is to be liberally construed and doubts resolved in favor of the law. *Board of Directors v. Peterson,* 4 Wash. 147, 29 Pac. 995; *Nelson v. Troy,* 11 Wash. 435, 39 Pac. 974; *State ex rel. Dustin v. Rusk,* 15 Wash. 403, 46 Pac. 387; *Smith v. Seattle,* 25 Wash. 300, 65 Pac. 612.

*P. P. Carroll* and *John E. Carroll,* for respondent.

HADLEY, J.—This is an action to enjoin the county of King and the county commissioners thereof from issuing and selling certain bonds for the purpose of procuring funds to assist in the construction of an armory building in the city of Seattle. The complaint alleges that the members of the board of county commissioners, purporting to act as such board, are about to issue and sell bonds for said purpose to the amount of $80,000, and that they will do so unless restrained; and that said commissioners assume to issue and sell said bonds under the authority of an act of the legislature of this state passed in 1903, and found set forth in the session laws of that

year at page 209 *et seq.* The plaintiff alleges that he is a citizen of the United States, and a resident of the state of Washington, residing in the city of Seattle, in King county; that he owns real and personal property in said county subject to taxation therein, upon which taxes have been and are now being assessed and levied pursuant to law; that he brings this suit in his own behalf and in behalf of all the taxpayers of said county.

It is also alleged that the site and all buildings, improvements, and structures to be erected thereon by the expenditure of the proceeds of the sale of said bonds do and will at all times belong to the state of Washington, and not to the county of King; that the issue of such bonds, the sale thereof, and the appropriation of the proceeds of such sale for said purpose, are contrary to the constitution of the state of Washington; that the aforesaid act of 1903 is unconstitutional and void; and that, if said bonds are sold the annual tax levy upon the property of plaintiff, and upon all other property in King county, will necessarily be greatly increased for the purpose of raising the necessary funds to pay interest upon the bonds and to redeem them at maturity, to the irreparable damage of plaintiff and all other taxpayers in said county.

The defendants interposed a demurrer to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was overruled. The defendants elected to stand upon their demurrer, refusing to plead further, and judgment was entered for the plaintiff. The judgment especially recites and adjudges that the said legislative act of 1903 is unconstitutional and void, and enjoins the defendants from in any manner attempting to enforce it or any part thereof, and from doing or attempting to do any of the acts and things of which the plaintiff complains in the complaint. The defendants have appealed.

The sole question involved in the appeal is the constitutionality of the legislative act aforesaid. A number of reasons are urged for holding the act invalid, but our determi-

nation as to one question discussed in the briefs is decisive
of the case, and we shall confine our discussion to that sub-
ject.     Respondent contends that the provisions of the act
amount to special legislation within the prohibitive require-
ments of the state constitution.    Art. 2, § 28, of the consti-
tution provides that, "The legislature is prohibited from
enacting any private or special laws in the following cases:
.   .   . 6.   For granting corporate powers or privileges."
It is urged that the act in question does grant special cor-
porate powers and privileges.    Section 1 of the act is as
follows:

"That for the purpose of assisting in the construction of
an armory for the use of such organizations of the National
Guard of Washington as may be stationed there, the sum of
$30,000 is hereby appropriated from the military fund for
the construction of an armory in the city of Seattle:    *Pro-
vided,* That a suitable site for such armory be furnished with-
out cost to the State of Washington therefor, and that such
site and all buildings, improvements and structures thereon
shall forever belong to the State of Washington."    Laws 1903,
p. 209.

Section 2 is in terms the same, except that it provides $20,-
000 for the construction of an armory in the city of Tacoma.
Section 3 in like manner appropriates $20,000 for the con-
struction of an armory in the city of Spokane.    Sections 4
and 5 are as follows:

"Sec. 4.    That the counties of King, Pierce and Spokane,
each of them by and through its board of county commis-
sioners, and the cities of Seattle, Tacoma and Spokane, each
of them by and through its council, are hereby severally au-
thorized and empowered to contract indebtedness for the pur-
poses of purchasing such armory sites and assisting in the
construction of such armories, and to issue negotiable bonds
therefor whenever the board of county commissioners of the
respective county, or the council of the respective city shall
deem it advisable, to an amount which, together with the ex-
isting indebtedness of such county or city, shall not exceed
one and one-half per centum of the taxable property of such

county or city, to be ascertained by the last assessment for county or city purposes.

"Sec. 5.    That each and every county and city mentioned in section 4 of this act may contract indebtedness for the purposes herein specified and issue bonds therefor in excess of the amount named in said section 4 of this act, but not exceeding in amount, together with the existing indebtedness, five per centum of the taxable property to be ascertained as provided in said section 4, whenever three-fifths of the voters of such county or city voting on said question assent thereto at an election to be held for that purpose, consistent with the general election laws, which election may be either a general or special election."

The remainder of the act is devoted to details for carrying into effect the foregoing provisions. Does the act grant corporate powers and privileges to counties and cities named therein? Appellants contend that it does not. Their position seems to be that, as the power to issue and sell bonds already resides in these counties and cities, the act does not confer any new corporate power. Their powers in that regard are, however, defined and limited by the constitution and laws to the specified purposes. This act undertakes to confer upon them the power to issue and sell bonds for a purpose not heretofore granted. As supporting their contention appellants cite *State ex rel. Knisely v. Jones,* 66 Ohio St. 453, 64 N. E. 424, 90 Am. St. 592. We are unable to construe the opinion in that case as appellants do. It seems to us to be clearly opposed to their contention here. After making some observations as to what may be corporate powers, the court said:

"Surely we shall not err if we regard the phrase 'corporate powers' as embracing all the powers which, within the observation of those who framed and adopted the constitution, were conferred upon and exercised by all the cities of the state. Of these powers, perhaps none is more conspicuously exercised than that of maintaining the public order and enforcing municipal ordinances. It is also quite obvious that this act contemplates a large increase in the expense of main-

5—43 WASH.

taining the police department of Toledo, and that expense must be paid with money raised by the exercise of the municipal power of taxation. That is a corporate power."

So, in the case at bar, it is clear that the act in question contemplates a new and substantial increase in the expenses of the counties and cities named for a purpose not heretofore authorized, and "that expense must be paid with money raised by the exercise of the municipal power of taxation," which the case cited says is a corporate power. It is true the corporate power of taxation resided in the municipalities before this act, but not for the purposes specified in the act. There can be no doubt that the corporate powers referred to in the constitution relate to those conferred upon municipal corporations as well as to those conferred upon private corporations. Upon this subject the supreme court of Ohio, in the case above cited, said:

"It is no longer doubted that the corporate powers contemplated by this section are those conferred upon municipalities as well as those conferred upon private or commercial corporations."

The provision of the Ohio constitution referred to is as follows: "The general assembly shall pass no special act conferring corporate powers." There is no essential difference between the above and the provision in our own constitution. It was held in *City of Cincinnati v. Trustees of Cincinnati Hospital*, 66 Ohio St. 440, 64 N. E. 420, that the power conferred by a legislative act to raise funds for the repair and extension of a hospital belonging to a city, and to levy a tax upon all the taxable property within such city for their payment, is a corporate power within the constitutional prohibition against special legislation. The supreme court of Kansas has construed a similar constitutional provision as referring to the corporate powers of a municipal corporation as well as to those of private corporations. *City of Atchison v. Bartholow*, 4 Kan. 104; *City of Wyandotte v. Wood*, 5 Kan. 603.

In the last cited case the court, when speaking with reference to what are corporate powers, said:

"Now, if the conferring of all the corporate powers of the city of Wyandotte over territory where such corporate powers did not before exist is not conferring corporate powers, we hardly know what to call such an act."

So, in the case at bar, powers which are corporate in their nature and which the specified municipalities did not before possess are conferred by the act in question. See, also, *Pell v. Newark,* 40 N. J. Law 550, 29 Am. Rep. 266. Our constitutional provision is general and unlimited in its use of the term "corporate powers," and, as a matter of first impression, we should feel impelled to hold that it was manifestly intended to include municipal as well as private corporate powers. That view is fortified by the authorities above cited, which have so construed similar constitutions. We therefore hold that the act in question does confer corporate powers within the meaning of the constitution.

Corporate powers cannot be conferred by a special law under the constitutional provision here invoked. Is this a special law? It will be observed that the counties of King, Pierce, and Spokane, and the cities of Seattle, Tacoma, and Spokane are alone, and specifically, affected by the act. No additional powers or privileges are extended to any of the other counties and cities of the state. There is not even an attempt at classification of the counties and cities of the state so that all of any specified class may be similarly affected, Whether such a classification, if it were one not extending to all counties and cities in the state, would make this a general law, having in view the particular purposes of the act, we do not decide, as such question is not now here. Certainly, however, without any attempt to specify a class which shall be similarly affected, the act is lacking in any of the features of a general law. In *Town of Denver v. Spokane Falls,* 7 Wash. 226, 34 Pac. 926, this court passed

upon the constitutionality of § 6 of the act of March 27, 1890, Laws of 1889-90, page 135. The section is as follows:

"All towns, villages and cities heretofore incorporated by virtue of an act entitled 'An act for the incorporation of towns and villages in the Territory of Washington,' approved February 2, 1888, may incorporate under the provisions of this act, in the manner provided by section 4 of chapter one of this act."

It was urged that the section violated the constitutional provision relating to special legislation, and it was so held. It was insisted that the act was general because it applied to all communities in the state similarly situated. Upon that subject the court said:

"But we think that cannot be said to be the exclusive test. If the operation and effect of a statute is necessarily limited to a particular class or number of persons or things, it is as much a special statute, whatever may be its form, as it would be if it applied to but one person or thing only. Now, the legislature found certain aggregations of citizens, in different localities throughout the state, assuming, without warrant of law, to be municipal corporations, and in order to relieve them from the embarrassment consequent upon the condition in which they had placed themselves, enacted the section of the statute in question. Would the character of the provision be different if it applied to but one such community instead of several? ·Manifestly it would not. We think it was, and was intended to be, a special provision, applicable solely and exclusively to existing conditions. It is, therefore, not a general law, and, as it purports to grant special corporate powers and privileges to the appellant town and its so-called officers, it is unconstitutional, and consequently void. See *City of Topeka v. Gillett,* 32 Kan. 431 (4 Pac. Rep. 800; 5 Am. & Eng. Corp. Cases, 390), in which case the court, upon an elaborate review of the adjudged cases upon this question, reached the same conclusion we have arrived at in this case; and, being unconstitutional, it is as ineffectual and inoperative as though it had never been passed."

Much could be said in favor of the theory of a classification in the above case, but the court refused to hold that the law

was a general one. The statute now before us is not susceptible to the argument that even a classification was attempted, and the case therefore presents a more striking instance of special legislation than did the former one. We see no escape from the conclusion that the statute is a special one.

The judgment of the trial court was therefore correct, and it is affirmed.

MOUNT, C. J., FULLERTON, CROW, DUNBAR, RUDKIN, and ROOT, JJ., concur.