[No. 54565–1.   En Banc.   March 2, 1989.]

LYNDEN TRANSPORT, INC., *Respondent,* v. THE STATE OF WASHINGTON, ET AL, *Appellants.*

*Kenneth O. Eikenberry, Attorney General,* and *Elsa Kircher Cole, Assistant,* for appellant State.

*William R. Squires III, Susan J. Woyna,* and *Davis, Wright & Jones,* for appellant Pacific Coast Coal Co.

*Bogle & Gates, Ronald T. Schaps,* and *Stephen A. Bernheim,* for respondent.

BRACHTENBACH, J.—At issue is the constitutionality of RCW 39.24.020 which requires the State and specified subdivisions to purchase fuel which "shall have been wholly mined or produced within the state of Washington." On summary judgment motions, the trial court held the statute unconstitutional and further held that if a prior version of that statute were revived, it also was unconstitutional. We affirm.

This controversy arises from a coal purchase contract whereby the University of Washington agreed to purchase coal from Pacific Coast Coal Company (Pacific Coast). The contract, for a 9–year term ending October 31, 1995, was negotiated directly, without competitive bidding.

Plaintiff, Lynden Transport, Inc. (Lynden), a Washington corporation, brought this action to prevent performance of the contract between the University and Pacific Coast, obtain a declaratory judgment that the in–state fuel purchase statute is unconstitutional, and require the University to put the subject contract out for competitive bidding. Pacific Coast intervened as a defendant.

Lynden had supplied part of the University's coal needs with coal mined on Vancouver Island, British Columbia. Lynden alleges that it has in–state coal reserves.

The parties stipulated to certain facts for the purpose of cross motions for summary judgment; the following facts

are from that stipulation. Prior to the 1960's the University utilized coal which it purchased from in–state mines as its main fuel, with competitive bidding if there was more than one producer of in–state coal. In the mid–1960's coal became noncompetitive; the University converted its boilers and used oil and natural gas from out–of–state suppliers. In the mid–1970's, when coal again became competitive, the University began using coal as its main fuel.

Since 1968 no in–state coal source could meet the University's coal needs in terms of price, quantity, and quality, until Pacific Coast's mine began production. The University therefore contracted for coal from Utah and from Lynden's Vancouver Island site. In 1981 Pacific Coast began development of a mine at Black Diamond, which is the only known in–state coal source being mined which is capable of meeting the University's quantity and quality requirements. Over Lynden's protest, the University Regents authorized the negotiations with Pacific Coast which led to the contract at issue.

The University's justification for entering the coal purchase contract without competitive bidding is that RCW 43.19.1906(3) authorizes nonbidding purchases when they "are clearly and legitimately limited to a single source of supply." The University reasons that RCW 39.24.020 mandates purchase from an in–state source, and, since Pacific Coast is the single source of in–state coal capable of meeting its requirements, the University is statutorily authorized to contract without bidding.

The parties stipulated that if RCW 39.24.020 did not require the University to purchase coal wholly mined within the state, the University would have been required to utilize competitive bidding. No party questions whether that is an impermissible stipulation of law, *see Rusan's, Inc. v. State,* 78 Wn.2d 601, 606, 478 P.2d 724 (1970), but we do not deem that question material to our resolution of the issues.

The University and Pacific Coast have terminated their contract, therefore the initial controversy is moot.

Nonetheless, the parties urge us to decide the broader issues. There are facts in the record by stipulation and by defendants' answers to interrogatories and requests for admission. These provide a framework to determine the matter, under our criteria for considering otherwise moot issues. *See Hart v. Department of Social & Health Servs.*, 111 Wn.2d 445, 759 P.2d 1206 (1988); *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972). Those criteria, set out in *Sorenson,* are satisfied here: the constitutionality of the statute is of a public rather than a private nature; an authoritative determination as to the constitutionality of the statute is desirable to provide guidance to those public officers who must determine whether to and how to comply with the statute; and, although the statute appears to have been largely ignored for nearly 50 years, it is quite possible that the issues in this case will recur since the statute's language encompasses all fuel purchases made by governmental units in the state.

We first turn to an examination of the challenged statute, RCW 39.24.020, the main body of which provides:

> No fuel shall be purchased for use or used in any plant, building, institution or establishment of any kind owned or operated by the state of Washington, or by any county, city, town, school district, or other municipal corporation or agency of any kind, in the state of Washington, unless the same shall have been wholly mined or produced within the state of Washington: *Provided, . . .*

This statute was a 1937 amendment of a 1933 act. The portion quoted above is identical in both the 1933 and 1937 versions. Laws of 1933, ch. 179, § 1; Laws of 1937, ch. 164, § 1.

The first proviso in the 1933 act provided that it was not to impair any valid contract in force on February 1, 1933; the 1937 amendment simply changed the date to February 1, 1937. The second proviso is identical in both acts, to wit: "No such existing contract shall be extended or renewed unless it complies herewith: . . ."

The last proviso in the 1937 amendatory act differs from the 1933 law. Each proviso is set out in the footnote.[1] It is

[1] "*Provided,* That the department of business control shall have and exercise full powers of investigation in cases where the advisability of making changes in equipment is questioned. No building, plant, institution or establishment shall be compelled to comply with the provisions of this act if the department of business control, upon its investigation finds the 'cost' of heating by the using of state fuels is over five per cent (5%) greater than the 'cost' of heating by the use of out of state fuels. The department of business control may extend the allotted time for making such changes if in its opinion this is believed to be necessary." Laws of 1933, ch. 179, § 1.

"*Provided,* That, no such plant, building, institution or establishment of any kind, which, at the time of the passage of this act, is using and/or burning fuel therein, mined or produced outside of the State of Washington, shall be compelled to comply with the provisions of this act, if the director of the department of finance, budget and business of the State of Washington determines and finds the cost of heating such plant, building, institution or establishment by the use of fuels wholly mined or produced within the State of Washington is over five per cent (5%) greater than the 'cost' of heating such plant, building, institution or establishment by the use of fuels wholly mined or produced outside the State of Washington, and written permission shall be issued by the director of the department of finance, budget and business to continue the use of out–of–state fuel. An application shall be filed with the director of the department of finance, budget and business, by the state, municipality, or political subdivision owning or operating such plant, building, institution or establishment, before January 1, 1938, for permission to continue the use of out–of–state fuel therein and for a hearing for such a determination and find, and a hearing shall be had upon such application. Upon the filing of such application, the director of the department of finance, budget and business shall cause a hearing to be had thereon on or before June 1, 1938, and shall cause to be published in some newspaper printed in the vicinity of the place where such plant, building, institution or establishment is located, a notice stating the name of the applicant, the purpose, nature and object of the application, the plant, building, institution or establishment involved, and the time and place of the hearing of such application. Such notice shall be published once in each week for three successive weeks. Proof of such publication shall be made by affidavit of the publisher of the newspaper. Such hearing shall be had upon sworn testimony. The director of the department of finance, budget and business or his assistants may administer oaths and issue subpoenas to enforce the attendance of all necessary witnesses. The director of the department of finance, budget and business shall have full power after such hearing to determine and find whether the cost of heating such a plant, building, institution or establishment by the use of fuels wholly mined or produced in the State of Washington is over five per cent (5%) greater than the cost of heating such a plant, building, institution or establishment by the use of fuels wholly mined or produced outside the State of Washington, and such determination and finding shall be final and conclusive, and shall be made within thirty (30) days after the close of such hearing. If the director of the department of finance, budget and

clear that the last proviso of the 1937 act permitted use of out–of–state fuels only by those entities using out–of–state fuels at the time of the passage of the 1937 enactment. The procedures established therein contemplate a 1–time determination to permit *continued* use of out–of–state fuels. The deadline of January 1, 1938, to seek permission to continue to use out–of–state fuel conclusively establishes that fact. The meaning of the last proviso of the 1933 act will be explained hereafter.

The first legal issue concerns the effect of our decision in *Nicholls v. Spokane Pub. Sch. Dist. 81*, 195 Wash. 310, 80 P.2d 833, 82 P.2d 857 (1938). The trial court concluded that the *Nicholls* decision required its holding that the 1937 act was unconstitutional in its entirety.

The court in *Nicholls* applied two rules to determine that the section which is now RCW 39.24.020 was constitutionally prohibited as a special law concerning the management of public schools. First, the court relied upon the rule that a statute is special when it makes a classification as of the time of passage and makes no provision for future changed conditions. Second, the court stated that a classification not based on any reasonable ground constitutes a special statute. In discussing the reasonableness of the classification the court correctly said that, under the statute's third proviso, a district using out–of–state coal on the day of passage of the act could continue to do so while another district not using out–of–state coal on the same day would be prohibited from thereafter using it. The court said: "There certainly is no reasonable basis for such a classification." *Nicholls*, at 313.

---

business denies the application for permission to continue the use of out–of–state fuels and makes a determination or finding adverse to the applicant, the applicant shall have until September 1, 1938, within which to make necessary changes in plant or equipment. Pending the filing of the application for such hearing, the giving of notice, the holding of such hearing, and the rendition of a decision, no such plant, building, institution or establishment shall be required to change from the use of out–of–state fuels to the use of fuels wholly mined or produced within the state." Laws of 1937, ch. 164, § 1.

The court concluded that the 1937 act is a special law "for both of these reasons." *Nicholls,* at 312. The court then concluded that "[t]he law [the 1937 act], being special, for the reasons indicated, and not general, is unconstitutional, because such a law is inhibited by subd. 15, § 28 of Art. II of the state constitution . . ." *Nicholls,* at 313.

The *Nicholls* decision is somewhat imprecise both as to holding and rationale. However, because of our independently reached rationale here for determining the unconstitutionality of the statute, we need not ascertain the exact holding of *Nicholls.*

In analyzing the legislation, we examine the classification resulting from each act, 1937 and 1933. Both acts initially encompass identical governmental entities as enumerated in the body of each act. The potential classifications with which we are concerned result from the third proviso of each act.

The 1937 proviso exempts each plant, building, institution or establishment of any kind *which, at the time of passage of the act,* "is using and/or burning fuel therein, mined or produced outside of the State . . ." A mechanism is provided for a department of state government to determine whether the "cost of heating" such building with in–state fuels is over 5 percent greater than the "cost of heating" with out–of–state fuels. The classification is made based on the date of passage of the act. Fuel for a particular building must be wholly from an in–state source unless fuel for that particular building on a particular date came from out–of–state. Then the entity heating that building must convince the department that switching entirely to in–state fuel will increase the "cost of heating" over 5 percent. The department's determination is final.

■ It was this absolute and never–can–be–changed classification which led the *Nicholls* court to conclude that the statute was a special law and the classification made was without a reasonable basis. By employing an immutable standard for exemption the act created a special class as

assuredly as if the Legislature had named the public buildings which did not have to comply with the law. It is that unchangeable characterization which created a law special to those particular buildings, thus granting a possible exemption to a fixed or finite group.

Our examination of the nature of the legislation as special does not end the inquiry, because in the absence of a constitutional prohibition the enactment of special laws is within the province of the Legislature. *Martin v. Tollefson,* 24 Wn.2d 211, 214, 215, 163 P.2d 594 (1945).

The defendants contend that the special law prohibition is relevant only as to common schools. *See* Const. art. 2, § 28(15); *Nicholls.* It is argued the University is not a common school and therefore that constitutional provision is inapplicable. Because we necessarily undertake a broader examination of the statute to justify an opinion in an otherwise moot case, we look further.

The constitution also prohibits special laws granting corporate powers. Const. art. 2, § 28(6). This prohibition applies to municipal corporations as well as to private corporate powers. *Miller v. Pasco,* 50 Wn.2d 229, 235, 310 P.2d 863 (1957); *Terry v. King Cy.,* 43 Wash. 61, 67, 86 P. 210 (1906). A municipal corporation is a body politic which is established by law as an agency of the state chiefly to regulate and administer the local and internal affairs of an incorporated city, town, or district. *Lauterbach v. Centralia,* 49 Wn.2d 550, 554, 304 P.2d 656 (1956). The prohibition of Const. art. 2, § 28(6) does not extend to state agencies acting on the state's behalf, however. *State ex rel. Tattersall v. Yelle,* 52 Wn.2d 856, 862–63, 329 P.2d 841 (1958).

These special laws are unconstitutional as to every form of municipal corporation, not just as to school districts. Numerically, municipal corporations constitute the vast bulk of governmental units otherwise subject to the mandate of this legislation. Therefore, the third proviso in the 1937 law is not only unconstitutional special legislation as to the substantial number of common schools, but also

as to the substantial number of municipal corporations. We conclude that the proviso is unconstitutional in its entirety, for without these entities, we do not perceive that the Legislature would have enacted the proviso.

Defendants urge that the Laws of 1933 proviso does not suffer the time–based defect of the Laws of 1937 proviso. They construe the 1933 act as making the greater than 5 percent cost differential available to all entities subject to the act. We disagree. The third proviso of the Laws of 1933, while hardly a model of clarity, creates a classification which is also fixed as of a point in time and which can never change. It contains the same ingredients as the 1937 proviso. The first sentence grants the department of business control full powers of *investigation* where the advisability of making changes in equipment is questioned. It is obvious that only those buildings which were using out–of–state fuel would require equipment changes for compliance with the statute at the time of its passage. It is only upon that investigation, *i.e.,* to determine advisability of changing equipment for existing heating plants, that the greater than 5 percent cost comes into play. The last sentence is perplexing in granting the department authority to extend the "allotted time for making changes." There is no other reference to "allotted time," but a fair reading of the entire proviso leads to the conclusion that only those existing heating plants which had to change equipment to burn in–state fuel were given any opportunity for utilization of the greater than 5 percent cost exemption. It is only upon investigation by the department of business control that there can be consideration of the cost differential. The investigation authorized can occur only when the governmental unit questions the advisability of changing its equipment.

The language of the 1933 proviso plainly locks in place a condition existing at a certain time, making no provision for changes in future circumstances. It applies to the same governmental entities, and suffers the same malady, as the 1937 proviso.

Our opinion in *Ruffcorn v. Seattle*, 189 Wash. 53, 63 P.2d 503 (1937), is not to the contrary. While the 1933 act was addressed there in the context of a fuel burning facility constructed after passage of the act, this court specifically declined to address the validity of the statute. Instead, the court decided that because the state had failed to provide for administration of the act, a municipal corporation was not compelled to comply with its provisions. Unquestionably, the court did not attempt to divine the nature of the third proviso.

██ Pacific Coast argues that if the third proviso in the Laws of 1937 is struck down, the balance of the act remains, pursuant to a severance clause, RCW 39.24.040. While we generally attempt to give effect to a severability clause as indicating the Legislature's intent that the remainder of an act would have been passed without the invalid portion, a severability clause will not save other portions of the act if the court nonetheless decides that the Legislature probably would not have passed the remaining portion of the act without the invalid part or if we believe the remaining valid enactment would not reasonably accomplish the legislative purpose. *State v. Anderson*, 81 Wn.2d 234, 236, 501 P.2d 184 (1972). Without the third proviso the remainder of the 1937 act would absolutely mandate use of in–state fuel regardless of cost and regardless of fuel being used at the time of passage. Both the 1933 and 1937 acts attempted to mandate compliance only if the greater than 5 percent cost differential were available. Both acts express legislative awareness that existing facilities might face conversion costs to utilize in–state fuel. Both acts reflect concern with the cost of heating rather than with the cost of fuel alone. These facts compel the conclusion that the third proviso in both acts is intimately and inseparably connected with an essential condition of the mandatory use of in–state fuel. Thus, they are not severable.

The defendants argue that even if the 1937 act is held entirely unconstitutional, that holding necessitates revival

of the 1933 act. *State v. Kolocotronis,* 73 Wn.2d 92, 104, 436 P.2d 774 (1968); *State ex rel. Kirschner v. Urquhart,* 50 Wn.2d 131, 138, 310 P.2d 261 (1957). Since, as we have explained, the invalid third proviso of the 1933 law is not severable, revival of the 1933 act is of no help to defendants. That statute also is unconstitutional in its entirety.

We hold that both the 1933 and 1937 acts are unconstitutional and therefore affirm the trial court.

CALLOW, C.J., and UTTER, DOLLIVER, DORE, PEARSON, DURHAM, and SMITH, JJ., concur.

ANDERSEN, J. (concurring)—I concur with the majority that this State's public purchase preferences statute contains a special law which renders it invalid. I write separately, however, to emphasize that properly drafted purchase preference statutes are not unconstitutional.

The majority decision, as I perceive it, concludes that the purchase preference statute at issue (RCW 39.24.020) is invalid because it contains a special law. The statute mandates that no fuel shall be purchased for facilities owned or operated by governmental units "unless the same shall have been wholly mined or produced within the state of Washington".[2] A proviso to the statute, however, exempts, under certain conditions, facilities using fuel mined or produced out of state "at the time of the passage of this act".[3] This unchangeable, time–based classification creates a special law.[4] It is this special law aspect of the purchase preference statute that violates article 2, section 28(6) and (15) of our State Constitution and renders it invalid. I concur with the majority opinion so concluding.

---

[2] RCW 39.24.020.

[3] RCW 39.24.020.

[4] *See Nicholls v. Spokane Pub. Sch. Dist. 81,* 195 Wash. 310, 80 P.2d 833, 82 P.2d 857 (1938).

The majority opinion does not, however, declare purchase preference statutes to be per se unconstitutional. Indeed, they are not. The overwhelming weight of authority supports the validity of such statutes. Several jurisdictions have enacted them,[5] and they have generally been upheld in the courts.[6]

The ends supported by purchase preference statutes are appropriate ones and the Legislature may enact such statutes without apology. As we recognized in *Equitable Shipyards, Inc. v. State*, 93 Wn.2d 465, 479, 611 P.2d 396 (1980), such statutes can support the legitimate interest of strengthening state and local economies. They can also serve the valid purpose of offsetting the subsidization of foreign industries by foreign governments. This, for example, was a primary purpose behind the federal Buy American Act,[7] our nation's preeminent purchase preference statute.[8] The Buy American Act is similar to Washington's

---

[5]10 E. McQuillin, *Municipal Corporations* § 29.47, at 341 (3d ed. 1981).

[6]64 Am. Jur. 2d *Public Works and Contracts* § 27 (1972). *See also Gary Concrete Prods., Inc. v. Riley*, 285 S.C. 498, 331 S.E.2d 335 (1985); *Galesburg Constr. Co. v. Board of Trustees*, 641 P.2d 745 (Wyo. 1982); *State ex rel. Collins v. Senatobia Blank Book & Stationery Co.*, 115 Miss. 254, 76 So. 258 (1917); *In re Gemmill*, 20 Idaho 732, 119 P. 298 (1911); *Allen v. Labsap*, 188 Mo. 692, 87 S.W. 926 (1905).

[7]P. Gantt & W. Speck, *Domestic v. Foreign Trade Problems in Federal Government Contracting: Buy American Act and Executive Order*, 7 J. Pub. L. 378, 381 (1958).

[8]41 U.S.C. § 10a. This section of the federal Buy American Act states in pertinent part: "unless the head of the department or independent establishment concerned shall determine it to be inconsistent with the public interest, or the cost to be unreasonable, only such unmanufactured articles, materials, and supplies as have been mined or produced in the United States, and only such manufactured articles, materials, and supplies as have been manufactured in the United States substantially all from articles, materials, or supplies mined, produced, or manufactured, as the case may be, in the United States, shall be acquired for public use."

public purchase preferences statute;[9] in fact, both were enacted in the same year.[10] Washington's purchase preferences statute also served to offset foreign subsidization. Specifically, the requirement of a preference for purchasing in–state fuel tended to offset Canada's practice of subsidizing the Canadian coal industry.[11] This then is yet another legitimate reason supporting the appropriateness of properly drafted preference statutes.

With this caveat, I concur with the majority's opinion affirming the trial court.

---

[9]*See* RCW 39.24.020.

[10]*See* 41 U.S.C. § 10a (Buy American Act enacted in 1933). Washington's public purchase preferences statute was originally enacted in 1933 (Laws of 1933, ch. 179, § 1). Our statute was then amended in 1937 (Laws of 1937, ch. 164, § 1).

[11]*See, e.g.*, The Economist 75–76 (May 4, 1985); R. Bott, *King Coal's Comeback Faltered a Few Years Ago But Now It Looks for Real*, Canadian Business (June 1982, Supp. at 4) (both discussing Canadian government investments in transportation for British Columbia mined coal).