259 P.3d 280 (2011)
162 Wash.App. 746
PASADO'S SAFE HAVEN, corporate taxpayer of Washington State and Snohomish County, on behalf of all similarly situated Taxpayers of Washington State and Snohomish County; and the Taxpayers of Snohomish County and Washington State on behalf of all similarly situated ex rel. Pasado's Safe Haven, Inc., Appellants/Cross-Respondents,
v.
STATE of Washington and Washington State Department of Agriculture, Respondents/Cross-Appellants.
No. 64452-1-I.
Court of Appeals of Washington, Division 1.
July 25, 2011.
*283 Kristen Kay Mitchell, Office of the Attorney General, Olympia, WA, Mark Hodgeman Calkins, Attorney General's Office, Olympia, WA, for Respondents.
Adam Phillip Karp, Animal Law Offices, Bellingham, WA, for Appellants.
DWYER, C.J.
¶ 1 For a declaratory judgment action to state a justiciable claim, the judicial relief sought must be of a type such that it would finally and conclusively resolve the dispute between the parties. Where this is not so, the court strays into the prohibited practice of issuing an advisory opinion when it addresses the merits of the parties' contentions. In this case, the relief soughta judicial declaration invalidating the challenged statute, the Washington humane slaughter of livestock act, chapter 16.50 RCW, only in partis not obtainable. Conversely, were plaintiffs to prevail on any one of their various constitutional challenges, the relief obtainablea judgment declaring the challenged statute to be invalid in its entiretyis neither sought nor desired. Thus, regardless of our resolution of the merits of the various challenges made, at the end of this case the status quo would necessarily prevail. Our opinion would be nothing more than an advisory one. Accordingly, a justiciable claim is not presented. For this reason, we affirm the order of the superior court dismissing the action.

I
¶ 2 The Washington humane slaughter of livestock act (Act) provides that the slaughter of livestock in our state "shall be carried out only by humane methods." RCW 16.50.100. Pursuant to the Act, two methods of slaughter are defined as humane:
"Humane method" means either: (a) A method whereby the animal is rendered insensible to pain by mechanical, electrical, chemical or other means that is rapid and effective, before being shackled, hoisted, thrown, cast or cut; or (b) a method in accordance with the ritual requirements of any religious faith whereby the animal suffers loss of consciousness by anemia of the brain caused by the simultaneous and instantaneous severance of the carotid arteries with a sharp instrument.
RCW 16.50.110(3). The Act further provides: "Nothing in this chapter shall be construed to prohibit, abridge, or in any way hinder the religious freedom of any person or group. Notwithstanding any other provisions of this chapter, ritual slaughter and the handling or other preparation of livestock for ritual slaughter is defined as humane." RCW 16.50.150. The Act criminalizes the slaughter of livestock by any method other than those methods legislatively determined to be "humane." RCW 16.50.170 (making a violation of the Act a misdemeanor subject to fines and jail time).
¶ 3 Pasado's Safe Haven, a Washington nonprofit corporation, filed a complaint against the State of Washington and the Washington State Department of Agriculture, challenging the constitutionality of RCW 16.50.110(3)(b) and RCW 16.50.150. The complaint purports to bring two claims for relief: an action for a declaratory judgment pursuant to the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, and a "taxpayer derivative suit" seeking the same relief.[1] Pasado's prayer for relief states:
The above provisions of Ch. 16.50 [RCW 16.50.110(3)(b) and RCW 16.50.150] ..., in prescribing different methods and exposing some to criminal prosecution, but not others, and in subjecting livestock to unnecessary animal cruelty and inhumane slaughter, are unconstitutional and/or illegal and should be stricken. A declaratory judgment and injunctive order to this effect should be entered.
Clerk's Papers at 448.
¶ 4 Thus, Pasado's seeks to have certain provisions of the Actspecifically, the provision defining as a "humane method" of slaughter "a method in accordance with the ritual requirements of any religious faith," set forth in RCW 16.50.110(3)(b), and the provision providing that the Act not be construed *284 to hinder religious freedom, set forth in RCW 16.50.150declared unconstitutional and stricken from the statute. The grant of Pasado's requested relief would alter the Act such that only one method of slaughter, rather than the two methods prescribed by the legislature, would be defined as "humane" and, thus, be lawful in our state. Such judicial actionthat of striking one of the two legislatively defined "humane method[s]" of slaughter from the Actwould result in the criminalization of a means of slaughter that our legislature expressly defined as lawful. Moreover, striking RCW 16.50.150 from the statute would implicate First Amendment freedom of religion concerns.
¶ 5 The State moved for judgment on the pleadings pursuant to CR 12(c), asserting several grounds for dismissal, including lack of standing and lack of justiciability. Both parties filed cross-motions for summary judgment.
¶ 6 The trial court granted in part and denied in part the State's motion for judgment on the pleadings. Although the trial court found that Pasado's did not have standing pursuant to the UDJA, the trial court did conclude that Pasado's had standing to bring the suit as a "taxpayer derivative action."[2] The trial court further concluded that the claim was justiciable. However, the trial court granted the State's motion for summary judgment, finding that the Act violates neither the federal nor state constitution, and dismissed the case.
¶ 7 Pasado's appeals. The State cross-appeals, assigning error to the trial court's ruling that Pasado's had standing to bring a so-called "taxpayer derivative action."

II
¶ 8 We review de novo a trial court's order for judgment on the pleadings.[3]N. Coast Enters., Inc. v. Factoria P'ship, 94 Wash.App. 855, 858, 974 P.2d 1257 (1999). In reviewing such an order, "we examine the pleadings to determine whether the claimant can prove any set of facts, consistent with the complaint, which would entitle the claimant to relief." N. Coast Enters., 94 Wash.App. at 859, 974 P.2d 1257. In our review, we are guided by "the fundamental principle that if a case can be decided on nonconstitutional grounds, an appellate court should refrain from deciding constitutional issues." Isla Verde Intern. Holdings, Inc. v. City of Camas, 146 Wash.2d 740, 752, 49 P.3d 867 (2002).
¶ 9 Notwithstanding that Pasado's complaint purports to assert two causes of action, a "taxpayer derivative suit" is not a separate cause of action pursuant to which a party can seek declaratory relief. To the contrary, the UDJA establishes the sole cause of action by which a declaratory judgment may be sought.[4] Rather than creating a separate cause of action, taxpayer standing principles simply provide a means to establish standing to bring such a claim. See State ex rel. Tattersall v. Yelle, 52 Wash.2d *285 856, 861, 329 P.2d 841 (1958).[5] "The two means of establishing standing do not equate to there being two different causes of action." Nw. Animal Rights Network v. State, 158 Wash.App. 237, 247 n. 9, 242 P.3d 891 (2010). Pasado's brought only one cause of action and seeks a single remedythe invalidation of discrete provisions of the Act.

III
¶ 10 An invalid statute is a nullity and "is as inoperative as if it had never been passed. The natural effect of this rule is that the invalidity of a statute leaves the law as it stood prior to the enactment of the invalid statute." Boeing Co. v. State, 74 Wash.2d 82, 88-89, 442 P.2d 970 (1968) (citation omitted). However, a return to the law as it stood prior to enactment of the Actthat is, prior to the criminalization of the inhumane slaughter of livestockis not the relief that Pasado's seeks. Indeed, given that Pasado's complaint avers that the Act's present deficiency is that it "subject[s] livestock to unnecessary animal cruelty and inhumane slaughter," the imposition of such relief would be anathema to Pasado's. Rather, the relief requested by Pasado's is that the court declare invalid only those provisions establishing ritual methods of slaughter as humane, leaving the remainder of the statute intact. Whether such relief is obtainable is ultimately a question of legislative intent. Griffin v. Eller, 130 Wash.2d 58, 69, 922 P.2d 788 (1996).[6]
¶ 11 The remedy of partial statutory invalidation is not always available. Indeed, this remedy is unavailable where the various provisions of the statute "are so connected and interdependent in their meaning and purpose that it could not be believed that the legislature would have passed one without the other." Jensen v. Henneford, 185 Wash. 209, 220, 53 P.2d 607 (1936); accord Leonard v. City of Spokane, 127 Wash.2d 194, 201, 897 P.2d 358 (1995); Hall v. Niemer, 97 Wash.2d 574, 582, 649 P.2d 98 (1982); State ex rel. King County v. Tax Comm'n, 174 Wash. 336, 339-40, 24 P.2d 1094 (1933). In Jensen, our Supreme Court addressed whether the unconstitutionality of particular provisions of the personal net income tax act of 1935 rendered the entire act unconstitutional. Jensen, 185 Wash. at 219-20, 53 P.2d 607. The act therein established a personal income tax, the amount of which was to be determined, in part, by tax credits allowable based upon marital status. Jensen, 185 Wash. at 213-14, 53 P.2d 607. The court held that the provisions providing for different tax credits against an individual's net income based upon marital status violated the uniformity provision of the state constitution, WASH. CONST. amend. 14. Jensen, 185 Wash. at 223, 53 P.2d 607. The court then analyzed whether the invalid provisions could be eliminated "and still leave a complete and workable act" or whether such elimination "would destroy the act entirely." Jensen, 185 Wash. at 223, 53 P.2d 607.
¶ 12 The court concluded that striking either of the constitutionally infirm provisions alone would "effect a result that the legislature never contemplated nor intended to accomplish." Jensen, 185 Wash. at 223, 53 P.2d 607. The court reasoned that, were it to eliminate only the provision establishing those credits allowed to single persons or, conversely, only the provision establishing those credits allowed to married persons, it would exacerbate the uniformity problem that rendered the provision invalid in the first place. Jensen, 185 Wash. at 223, 53 *286 P.2d 607. On the other hand, were the court to invalidate the entire section regarding tax credits, then the court would "not merely have taken something from the act, but [would] have added something to it, because the act would then operate on all net incomes of whatever amount." Jensen, 185 Wash. at 223, 53 P.2d 607. The court concluded that
any attempt at elimination [of the unconstitutional provisions] would involve a complete reconstruction, indeed a re-creation, of the act and would result in imputing to the legislature an intention which the present wording of the act does not sustain. Such a process indulged in, would not be judicial, but would be legislative, and would assume a power that we are not permitted to exercise.
Jensen, 185 Wash. at 224, 53 P.2d 607. Because striking only the constitutionally infirm provisions would have effected a result contrary to the legislature's intent, the court invalidated the act in its entirety. Jensen, 185 Wash. at 224, 53 P.2d 607.
¶ 13 Similarly, here, striking only those discrete provisions challenged by Pasado's would bring about a result that our legislature "never contemplated nor intended to accomplish." Jensen, 185 Wash. at 223, 53 P.2d 607. RCW 16.50.110(3)(b)in which our legislature defines a "humane method" of slaughter as a method "in accordance with the ritual requirements of any religious faith"is integral to the very statutory definition of "humane." Our legislature set forth in the Act only two "humane methods" for the slaughter of livestock; thus, striking one of those methods from the statute would fundamentally alter the statute's meaning. That these provisions are "so connected and interdependent" demonstrates that the legislature would not have passed one without the other. See Jensen, 185 Wash, at 220, 53 P.2d 607; Lynden Transp., Inc. v. State, 112 Wash.2d 115, 124, 768 P.2d 475 (1989) ("intimately and inseparably connected"). "[U]nless we conclude the legislature would have passed the statute absent the unconstitutional provisions, the proper remedy is complete statutory invalidation rather than changing legislative intent by upsetting the legislative compromise." In re Parentage of C.A.M.A., 154 Wash.2d 52, 67, 109 P.3d 405 (2005); accord Griffin, 130 Wash.2d at 69, 922 P.2d 788; cf. Unemployment Comp. Dep't v. Hunt, 17 Wash.2d 228, 240, 135 P.2d 89 (1943) ("Moreover, we do not believe that, if the legislature had thought that this one provision would be declared unconstitutional, it would have hesitated for an instant to pass the remainder of the act.").
¶ 14 Pasado's also challenges the constitutionality of RCW 16.50.150, which prohibits any construction of the Act that would hinder religious freedom. The supremacy clause, U.S. CONST. art. VI, cl. 2, causes the free exercise of religion, guaranteed by the first amendment to that constitution, to be a necessary concern of any state legislator. While Pasado's argues that by accommodating religious practices the legislature unconstitutionally established those practices, we need not (and do not) resolve that issue. The question is not whether it was constitutionally necessary for the legislature to pass the Act with the inclusion of RCW 16.50.110(3)(b) and RCW16.50.150. Rather, the questions are whether the legislature thought that it was desirablefor either constitutional or public policy reasons to do so and whether the legislature evinced a belief that it would not have passed the Act in the absence of those provisions. Both questions are easily answered in the affirmative. The legislature's directives in RCW 16.50.150 that "[n]othing in this chapter shall be construed to prohibit, abridge, or in any way hinder the religious freedom of any person or group" and that "[n]otwithstanding any other provisions of this chapter, ritual slaughter ... is defined as humane" are plain indications of the primacy of this concern to the legislature. Simply put, there is no reason for this court to believe that the legislature that passed the Act would have done so absent the inclusion of either or both of the challenged provisions.

IV
¶ 15 Invalidating only part of a statute is likewise improper where "the effect of so doing is to broaden the scope of the act so as to extend its provisions to a class of persons the legislature has said were not to *287 be included." State v. Inland Empire Refineries, Inc., 3 Wash.2d 651, 664, 101 P.2d 975 (1940). Therein, our Supreme Court held that a statutory provision providing for tax exemptions for particular distributors of petroleum products violated both the federal constitution's equal protection clause, U.S. CONST. amend. XIV, and the privileges and immunities clause of the state constitution, WASH. CONST. art. I, § 12. Inland Empire, 3 Wash.2d at 663-64, 101 P.2d 975. The court determined that striking only the constitutionally infirm provisions would improperly broaden the scope of the statute, as
a number of persons engaged in foreign commerce by vessel, which persons the legislature declared were not to be taxed, will become subject to the tax[,] .... two refineries located within this state which the legislature said were to be exempt, will be required to pay the tax[,] .... [and] all of the gas companies in the state which the legislature definitely, specifically, emphatically, stated were not to be taxed, would be rendered subject to the tax.
Inland Empire, 3 Wash.2d at 663-64, 101 P.2d 975. The court concluded:
"The general rule is that if such a proviso operates to limit the scope of the act in such a manner that by striking out the proviso, the remainder of the statute would have a broader scope either as to subject or territory, then the whole act is invalid, because such extended operation would not be in accordance with the legislative intent."
Inland Empire, 3 Wash.2d at 667-68, 101 P.2d 975 (quoting 11 Am.Jur. 855, § 161).
¶ 16 Here, were we to conclude that the provisions challenged by Pasado's are unconstitutional, we would similarly be precluded from striking only the invalid provisions because doing so would broaden the scope of the Act beyond that intended by the legislature. Livestock slaughterers currently slaughtering in accordance with the "humane method" set forth in RCW 16.50.110(3) would no longer be permitted to do so, thereby broadening the statute's reach. Thus, as in Inland Empire, were we to grant Pasado's requested relief, we would be improperly extending the scope of the Act beyond that contemplated by the legislature.
¶ 17 Because we do not believe that the legislature would have enacted the Act absent the challenged provisions and because striking only those provisions would broaden the scope of the Act, the challenged provisions, even if unconstitutional, could not be severed from the remainder of the Act.[7] Pasado's seeks not invalidation of the entire statute but, instead, requests that we strike only the challenged provisions. This we cannot do.

V
¶ 18 Because the authority to define crimes is legislative, not judicial, Pasado's requested relief is unavailable for yet another reason. Our Supreme Court's decision in Inland Empire is again instructive. The court therein recognized that, by striking only the constitutionally offensive portions of the statute, the statute "would be extended to make that a crime which the legislature said was not to be a crime." Inland Empire, 3 Wash.2d at 667, 101 P.2d 975. Had the court invalidated only the statute's tax exemptions, it would thereby have criminalized the nonpayment of taxes by those petroleum distributors that the legislature had exempted from the tax. Thus, the court concluded that the only proper remedy was invalidation of the statute in its entirety. Inland Empire, 3 Wash.2d at 667, 101 P.2d 975.
¶ 19 Similarly, here, were we to invalidate only those provisions challenged by Pasado's, a sole statutory "humane method" of slaughter would remain. Methods of slaughter that *288 comport with religious requirementscurrently lawful pursuant to the Actwould be rendered unlawful. See RCW 16.50.170 (setting forth criminal penalties for violation of the Act). Livestock slaughterers not currently subject to criminal penalties would become so, contrary to the intention of our legislature, which expressly deemed ritual slaughter to be "humane" and, therefore, lawful.
¶ 20 Were we to grant Pasado's requested relief and strike only those provisions of the Act challenged, we would not only be imputing to the legislature an intention that it did not havewe would also be encroaching upon the legislature's exclusive authority to criminalize previously lawful conduct. State v. Torres Ramos, 149 Wash.App. 266, 271, 202 P.3d 383 (2009) ("Authority to define crimes and set punishments rests firmly with the legislature."); accord State v. Ermert, 94 Wash.2d 839, 847, 621 P.2d 121 (1980); Nw. Animal Rights Network, 158 Wash.App. at 245, 242 P.3d 891. Thus, Pasado's requested relief is unavailable for this additional reason.

VI
¶ 21 Pasado's seeks a declaratory judgment pursuant to the Uniform Declaratory Judgments Act, chapter 7.24 RCW. The UDJA "is designed to settle and afford relief from insecurity and uncertainty with respect to rights, status and other legal relations." DiNino v. State, 102 Wash.2d 327, 330, 684 P.2d 1297 (1984). However, "a `justiciable controversy' must exist before a court's jurisdiction may be invoked under the act." DiNino, 102 Wash.2d at 330, 684 P.2d 1297. Indeed, our Supreme Court has made this requirement quite clear: "While we have acknowledged that the Uniform Declaratory Judgments Act provides a procedure `peculiarly well suited to the judicial determination of controversies concerning constitutional rights and ... the constitutionality of legislative action,' we have resolutely maintained that no decisions should be made under the Act absent a `justiciable controversy.'" To-Ro Trade Shows v. Collins, 144 Wash.2d 403, 417, 27 P.3d 1149 (2001) (alteration in original) (quoting Seattle Sch. Dist. No. 1 of King County v. State, 90 Wash.2d 476, 490, 585 P.2d 71 (1978)). Our authority is limited to resolving justiciable controversies because, otherwise, we "step[ ] into the prohibited area of advisory opinions." DiNino, 102 Wash.2d at 331, 684 P.2d 1297; accord Branson v. Port of Seattle, 152 Wash.2d 862, 877, 101 P.3d 67 (2004); Bloome v. Haverly, 154 Wash.App. 129, 141, 225 P.3d 330 (2010).
¶ 22 The State contended in the trial court that Pasado's claim was not justiciable, and the parties fully briefed and argued the issue to that court. Although justiciability was not a focus of the parties' initial briefing in this court, we authorized, and the parties submitted, additional briefing on the issue.[8] Because of the imperative that we avoid issuing advisory opinions, the issue of justiciability is necessarily present in any declaratory judgment action. Indeed, our authority to act is dependent upon whether a justiciable controversy exists. See DiNino, 102 Wash.2d at 330-31, 684 P.2d 1297. Moreover, we may properly affirm a trial court judgment on any basis established by the pleadings and supported by the record. In re Marriage of Rideout, 150 Wash.2d 337, 358, 77 P.3d 1174 (2003) (quoting Truck Ins. Exch. v. Vanport Homes, Inc., 147 Wash.2d 751, 766, 58 P.3d 276 (2002)).

VII
¶ 23 To be justiciable, a claim must involve:
"(1) ... an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and *289 substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."
DiNino, 102 Wash.2d at 330-31, 684 P.2d 1297 (alteration in original) (quoting Clallam County Deputy Sheriff's Guild v. Bd. of Clallam County Comm'rs, 92 Wash.2d 844, 848, 601 P.2d 943 (1979)). All four justiciability factors must be present "to ensure that the court will be rendering a final judgment on an actual dispute between opposing parties with a genuine stake in the resolution." To-Ro Trade Shows, 144 Wash.2d at 411, 27 P.3d 1149. The fourth element of a justiciable controversy is satisfied where a judicial determination of the issue raised will resolve the parties' dispute. See To-Ro Trade Shows, 144 Wash.2d at 417, 27 P.3d 1149 (noting that to satisfy the four-part justiciability test, "[the] dispute must be one that the court's decision will conclusively resolve").
¶ 24 Pasado's seeks a declaratory judgment that only certain provisions of the Actspecifically, those provisions regarding ritual slaughterare unconstitutional. The relief sought is that we strike the challenged provisions of the Act while leaving the remaining provisions intact. As we have explained, such relief is not obtainable because partial invalidation of the Act would effect a result not intended by the legislature. Therefore, even were we to conclude that the challenged provisions are constitutionally infirm (decisions we do not make), we would be precluded from granting Pasado's requested relief. Thus, a judicial determination of the issues raised herein would not conclusively resolve the parties' dispute. Pasado's claim is, therefore, not justiciable.[9]
¶ 25 The relief sought cannot be obtained, and the relief that can be obtained is not sought.[10] Accordingly, we affirm the superior court's judgment dismissing the action.[11]
We concur: LEACH, A.C.J., and BECKER, J.
NOTES
[1] The complaint additionally requests injunctive relief pursuant to chapter 7.40 RCW.
[2] We do not address the issue of standing and, thus, do not suggest that the trial court's ruling in this regard was correct.
[3] The trial court issued a single order in which it ruled on the State's motion for judgment on the pleadings and both parties' motions for summary judgment. It appears from the order, however, that the trial court ruled on the motion for judgment on the pleadings separately from ruling on the motions for summary judgment. Thus, because we do not reach the substantive issues raised in the parties' CR 56 motions, we review the trial court's ruling as a CR 12(c) judgment on the pleadings. See N. Coast Enters., 94 Wash. App. at 858, 974 P.2d 1257 (treating a trial court's order as a judgment on the pleadings where a declaration submitted to the court was not material to the court's disposition of the motion). However, even were we to review the ruling as a summary judgment order, we would nevertheless review de novo the trial court's ruling. See Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993) ("In reviewing a summary judgment order, an appellate court evaluates the matter de novo, performing the same inquiry as the trial court.").
[4] Finding that Pasado's had standing to bring its claim, the trial court accepted the parties' assertion that Pasado's had brought a "taxpayer derivative action." No such action exists, as the only action for a declaratory judgment is that pursuant to the Uniform Declaratory Judgments Act. Indeed, the case cited by the trial court in support of its ruling on taxpayer standing, Farris v. Munro, 99 Wash.2d 326, 662 P.2d 821 (1983), is inapposite, as that case was a suit seeking the issuance of a writ of mandamus, not a declaratory judgment action.
[5] Our Supreme Court in Tattersall held that a taxpayer who sought a declaratory judgment pursuant to the 1935 declaratory judgment act could establish standing through taxpayer standing principles. 52 Wash.2d at 861, 329 P.2d 841. The court did not, however, hold that this constituted a separate cause of action.

The UDJA superseded the declaratory judgment act. The Supreme Court has continued to apply taxpayer standing analysis in UDJA actions. See, e.g., Federal Way Sch. Dist. No. 210 v. State, 167 Wash.2d 514, 528-30, 219 P.3d 941 (2009).
[6] In determining legislative intent, "[t]he function of this court is to ascertain what the legislature has done, not to conjecture as to what the legislature could have done or what it might do in the future." Dep't of Fisheries v. Public Utility Dist. No. 1, 91 Wash.2d 378, 382, 588 P.2d 1146 (1979). Thus, our focus is on the actual legislature that passed the Act at issue, not on the hypothetical views of some different or later legislature.
[7] This is true notwithstanding the fact that the Act includes a severability clause. See RCW 16.50.900.

While we generally attempt to give effect to a severability clause as indicating the Legislature's intent that the remainder of an act would have been passed without the invalid portion, a severability clause will not save other portions of the act if the court nonetheless decides that the Legislature probably would not have passed the remaining portion of the act without the invalid part or if we believe the remaining valid enactment would not reasonably accomplish the legislative purpose.
Lynden Transp., 112 Wash.2d at 124, 768 P.2d 475.
[8] We did so because a "court's obligation to follow the law remains the same regardless of the arguments raised by the parties before it." State v. Quismundo, 164 Wash.2d 499, 505-06, 192 P.3d 342 (2008). In correctly deciding the cases before them, courts are not restricted to the authority cited by the parties. Indeed, "any court is entitled to consult the law in its review of an issue, whether or not a party has cited that law." Ellis v. City of Seattle, 142 Wash.2d 450, 460 n. 3, 13 P.3d 1065 (2000).
[9] We do not address whether Pasado's claim meets the other three justiciability requirements. Given our resolution of the case, such an analysis is unnecessary.
[10] Pasado's claim is not justiciable because the relief sought cannot be granted. However, this is not the equivalent of a CR 12(b)(6) failure to state a claim upon which relief can be granted. Were Pasado's to be determined to be correct on the merits of one or more of its constitutional challenges (a decision we do not make), some form of relief could be granted. However, Pasado's does not requestand does not wantthat relief. Rather, here, it is the specific relief sought by Pasado'spartial invalidation of the Actthat cannot be granted.
[11] A variety of issues were raised and briefed by the parties on appeal. Due to our resolution of the case, we do not address these issues. Nothing in this opinion should be construed as accepting or rejecting the parties' arguments on these other issues.