[No. 62540-9. En Banc.]
Argued January 17, 1996. Decided September 5, 1996.

SHARON GRIFFIN, *Appellant*, v. CARSON F. ELLER, *Respondent*.

---

*Marilyn J. Endriss, Kirstin S. Dodge,* and *Law Offices of Marilyn J. Endriss, P.S.,* for appellant.

*Davies Pearson, P.C.,* by *Peter T. Petrich* and *Katherine E. Blaine,* for respondent.

*Deborra E. Garrett, Patricia S. Rose,* and *Jeffrey L. Needle* on behalf of Washington Employment Lawyers Association and Northwest Women's Law Center, amici curiae.

SANDERS, J. — Employee Sharon Griffin (hereinafter Griffin) appeals a partial summary judgment dismissing that portion of her complaint seeking statutory remedies for alleged sexual discrimination pursuant to RCW 49.60, the State's law against discrimination. Because of the importance of the claim we granted direct review; however, we affirm the trial court's dismissal.

Two principal issues are raised: (1) is an employer of fewer than eight employees exempt from statutory remedies provided the employee under RCW 49.60 and, if so, (2) does this exemption violate the State's privileges and immunities clause, constitution article I, section 12. We hold employers of fewer than eight employees are statutorily exempt from these remedies provided under RCW 49.60 and conclude the exemption passes constitutional muster.

On September 20, 1990, Griffin was hired by attorney Carson Eller (hereinafter Eller), a sole practitioner, as his legal secretary. There were no written employment

contracts or policies. Griffin was Eller's only full-time employee. Attorney Eller never employed eight or more persons. He terminated Griffin's employment on July 15, 1991, indicating he could no longer afford to retain her in his employ.

Griffin alleges that she was subjected to a hostile work environment throughout her employment: Eller often made crude remarks of a sexual nature to and about her in spite of her objections; Eller induced others to make sexually abusive comments to and about her; and Eller subjected another female employee to similar sexual harassment, causing her to resign in March 1991. Griffin also alleges Eller denied her dental benefits, refused to allow her to take a paid vacation, assigned some of her duties to others, and ultimately terminated her employment in retaliation to her objections. Griffin asserts that Eller's conduct violates the law against discrimination, RCW 49.60. Eller disputes these factual allegations however declines to address them on appeal.

Griffin commenced suit against her former employer in Pierce County Superior Court alleging five causes of action: (1) sexual harassment and retaliation in violation of the statutory law against discrimination, RCW 49.60; (2) wrongful termination in violation of public policy; (3) negligent infliction of emotional distress; (4) outrage; and (5) failure to pay wages. Eller moved for summary judgment to dismiss all of Griffin's claims; however, the trial court granted Eller only partial summary judgment, dismissing the statutory claim for sexual harassment and retaliation. Ultimately, Griffin recovered $50,000 on the outrage and negligent infliction of emotional distress claims and appealed the partial summary judgment dismissing the statutory sexual discrimination claim.

The statute declares a public policy to obtain and hold employment without sexual discrimination and further provides:

> Any person deeming himself injured by any *act in violation of this chapter* shall have a civil action in a court of

competent jurisdiction to enjoin further violations, to recover the actual damages sustained by him, or both, together with the cost of suit including a reasonable attorney's fees or any other remedy authorized by this chapter or the United States Civil Rights Act of 1964. . . .

Former RCW 49.60.030(2) (emphasis added).

Griffin suggests this section be read independently from the remainder of the same chapter, which defines "employer" narrowly and exclusively:

**49.60.040 Definitions.** As used in *this* chapter:

. . . .

"Employer" includes any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons, and does not include any religious or sectarian organization not organized for private profit[.]

RCW 49.60.040 (emphasis added).

The statute was first enacted in 1949 to discourage employment discrimination on the basis of race, creed, color, or national origin. It created a state agency to administer the law and defined "employer" as set forth above. LAWS OF 1949, ch. 183. The original enactment, however, did not create a private cause of action by its terms but was amended to that effect in 1973. LAWS OF 1973, ch. 141.

■ There is no legislative history suggesting the purpose of the new statutory private remedy was to permit a statutory cause of action against small, otherwise exempt, employers. Unlike *Marquis v. City of Spokane,* 130 Wn.2d 97, 922 P.2d 43 (1996), we are here addressing the issue of a statutory exemption for small employers rather than statutory silence as to independent contractors.

Since creation of the statutory private remedy in 1973 this court has considered on two occasions its applicability to employers who do not otherwise meet the statutory def-

inition and on each occasion characterized it in the nature of an exemption.

In *Bennett v. Hardy*, 113 Wn.2d 912, 915, 784 P.2d 1258 (1990), we stated in dicta that a small employer was *exempt* from these statutory remedies ("[p]laintiffs . . . cannot bring a cause of action against him under RCW 49.60 . . . because he employs fewer than eight employees and thus is not within that statute's definition of employer").

*Bennett*'s dicta was followed by our holding in *Farnam v. CRISTA Ministries*, 116 Wn.2d 659, 807 P.2d 830 (1991) that an employer which does not meet the statutory definition (in that case a religious organization) is simply "*exempt* from the provisions of this chapter." *Farnam*, 116 Wn.2d at 673, 678 (emphasis added). The same considerations which prompted this court to so hold in *Farnam* (broad application, liberal construction, and legislative history) apply equally to the case at bar, which simply focuses on a different phrase in the same statutory definition of employer found under RCW 49.60.040.

Having previously determined in *Farnam* that this statute does not support a private cause of action against an exempt employer, we are controlled by that precedent; however, we still must determine whether the statute as applied here violates the State's privileges and immunities clause, constitution article I, section 12.

■■ While asserting her claim under the state constitution, Griffin does not seek an independent state constitutional interpretation or support an analysis independent of the federal constitution through a brief which addresses factors identified in *State v. Gunwall*, 106 Wn.2d 54, 58, 720 P.2d 808, 76 A.L.R.4th 517 (1986). Neither does she argue for a less deferential standard of legislative review under our state constitution. *Compare* Robert F. Utter, *Freedom and Diversity in a Federal System: Perspectives on State Constitutions and the Washington Declaration of Rights*, 7 U. PUGET SOUND L. REV. 491, 507-08 (1984) (presumption that statute is constitutionally valid "seri-

ously hampers the courts' accomplishment of what article 1, section 1 of the Washington Declaration defines as the fundamental purpose of our state's constitution and government: to protect and maintain individual rights"); *Fine Arts Guild, Inc. v. City of Seattle,* 74 Wn.2d 503, 445 P.2d 602 (1968) (certain restraints on state constitutional free speech rights presumed unconstitutional). Thus, the extent to which the constitutional guaranties found in article I, section 12, exceed those available under the equal protection clause of the Fourteenth Amendment remains an open question. *Compare Sofie v. Fibreboard Corp.,* 112 Wn.2d 636, 642 & n.2, 771 P.2d 711, 780 P.2d 260 (1989) ("[a]s for the analysis based on the language of our privileges and immunities clause, this question must wait for another case"); *see generally State v. Smith,* 117 Wn.2d 263 282-88, 814 P.2d 652 (1991) (Utter, J., concurring).

▆▆▆ Instead, Griffin urges a traditional federal analysis and contends intermediate scrutiny is appropriate because of the critical importance of the protections extended or denied by the law against discrimination. However, intermediate scrutiny requires an important right <u>and</u> at least a semisuspect class. *In re Runyan,* 121 Wn.2d 432, 448, 853 P.2d 424 (1993). This interest is important, but the class of small employers, or persons employed by them, is neither suspect nor semisuspect.

Therefore the rational basis test is the appropriate standard.

> Under the rational basis test the court must determine: (1) whether the legislation applies alike to all members within the designated class; (2) whether there are reasonable grounds to distinguish between those within and those without the class; and (3) whether the classification has a rational relationship to the proper purpose of the legislation.

*Convention Ctr. Coalition v. City of Seattle,* 107 Wn.2d 370, 378-79, 730 P.2d 636 (1986).

▆▆▆ Griffin argues that RCW 49.60 fails the first prong of the test by failing to apply alike to all members within

the designated class; i.e., suits against large employers are permitted, whereas suits against small employers are not. However, the Legislature may constitutionally approach the problem of employment discrimination one step at a time. This court has said, " 'It is no requirement of equal protection that all evils of the same genus be eradicated or none at all.' " *O'Hartigan v. Department of Personnel*, 118 Wn.2d 111, 124, 821 P.2d 44 (1991) (quoting *Railway Express Agency, Inc. v. People of New York*, 336 U.S. 106, 110, 69 S. Ct. 463, 93 L. Ed. 533 (1949)).

█ Griffin then contends the legislative classification offends the second prong of the test for lack of reasonable grounds for distinguishing between those within and those without the class. However, exemptions for small employers are common and have a rational basis. According to the STATE BY STATE GUIDE TO HUMAN RESOURCES LAW, 47 states have fair employment laws; 10 have no small-employer exemption; 13 have an employer exemption of between 2 and 7 employees; and 24 have employer exemptions between 8 and 15 employees. RONALD M. GREEN ET AL., STATE BY STATE GUIDE TO HUMAN RESOURCES LAW, tbl. 1.2-3, at 22-24 (1990). The Civil Rights Act of 1964 originally provided a small-employer exemption of 25. 42 U.S.C. § 2000e. Later it was proposed to reduce the number of employees to eight. *Armbruster v. Quinn*, 711 F.2d 1332, 1337 n.4, 72 A.L.R.Fed. 504 (6th Cir. 1983) (citing the legislative history of the federal act's employer definition). Congress finally settled on 15. *Id.* Griffin cites no case invalidating any of these exemptions on equal protection grounds, and, arguably, if the Legislature is entitled to relieve small employers of a statutory or regulatory burden, it must draw the line somewhere.

█ Finally, Griffin contends the third prong is not satisfied because the small employer exclusion is not "rationally related to the purpose of the legislation." *O'Hartigan*, 118 Wn.2d at 122. However, the Legislature may well have been advancing legitimate state purposes by conserving limited state resources and protecting small

businesses from private litigation expense, in addition to avoiding the regulatory burden inherent in regulation by the Human Rights Commission, per se. *Compare Bennett,* 113 Wn.2d at 928-29. Commentators offer similar reasoning for similar small employer exemptions. *See, e.g., Robinson v. Fair Employment & Housing Comm'n,* 2 Cal. 4th 226, 825 P.2d 767, 5 Cal. Rptr. 2d 782 (1992); Michael C. Tobriner, *California FEPC,* 16 HASTINGS L.J. 333, 342 (1965),[1] and *Armbruster,* 711 F.2d at 1337 n.4.

In a case strikingly similar to our own, under a similar employment discrimination statute which defined "employer" as any person who employs 15 or more employees, a legal secretary sued her sole-practitioner-attorney employer for sexual harassment. The Oklahoma Supreme Court rejected an equal protection challenge under the Fourteenth Amendment holding:

> [T]he legislature doubtless sought to avoid imposing upon small shops the potentially disastrous expense of defending against a state-law claim for workplace discrimination, . . . . We do not find this legislatively declared objective offensive to the Fourteenth Amendment's equal protection clause . . . . [The statute] bears a rational relationship to a permissible state objective. . . .

---

[1]"The first of five express exemptions to the FEPA [Fair Employment Practices Act] exempts from the act employers regularly employing less than five persons. There are several reasons for creating this exemption. A sense of justice and propriety led the framers to believe that individuals should be allowed to retain some small measure of the so-called freedom to discriminate; besides, they feared the political repercussions of eliminating totally an area of free choice whose infringement had been so bitterly opposed. In the second place, the framers believed that discrimination on a small scale would prove exceedingly difficult to detect and police. Third, it was believed that an employment situation in which there were less than five employees might involve a close personal relationship between employer and employees and that fair employment laws should not apply where such a relationship existed. Finally, the framers were interested primarily in attacking protracted, large-scale discrimination by important employers and strong unions. Their aim was not so much to redress each discrete instance of individual discrimination as to eliminate the egregious and continued discriminatory practices of economically powerful organizations. Thus they could afford to exempt the small employer." Michael C. Tobriner, *California FEPC,* 16 HASTINGS L.J. 333, 342 (1965) (footnote omitted).

*Brown v. Ford*, 905 P.2d 223, 227 (Okla. 1995) (emphasis omitted).

The Legislature may have had many reasons to adopt the small employer exemption in RCW 49.60. Certainly the State has a substantial interest in the well-being of small business with regard to the state economy, tax base, and opportunities for employment. Approximately 75 percent of business establishments in Washington have fewer than nine employees; however, they employ only about 17.5 percent of the private employee work force. U.S. Bureau of the Census, "County Business Patterns 1992: Washington," CPB 92-49 (1994). The Legislature could well have concluded burdening so many employers to benefit so few employees was not, on balance, of sufficient public benefit to offset the burden.

Griffin argues exempting small employers from statutory remedies would not serve the statutory purpose discussed in WAC 162-16-160(2) promulgated by the Human Rights Commission:

> (2) **Purposes of exemption.** The principal purposes of exempting persons who employ less than eight from the enforcement authority of the commission are:
>
> (a) To relieve small business of a regulatory burden; and
>
> (b) In the interest of cost effectiveness, to confine public agency enforcement of the law to employers whose practices affect a substantial number of persons.

WAC 162-16-160(2).

Griffin argues subjecting small employers to private lawsuits is neither a regulatory burden nor does it involve public agency enforcement. We have held, "[i]n interpreting a statute, great weight must be accorded to the contemporaneous construction placed upon it by officials charged with its enforcement, particularly where that construction has been accompanied by silent acquiescence of the legislative body over a long period of time." *Newschwander v. Board of Trustees*, 94 Wn.2d 701, 711, 620

P.2d 88 (1980) (citations omitted). However this administrative rule is hardly a "contemporaneous" construction of the statutory definition. Rather the small employer exemption was a feature of RCW 49.60 long before the adoption of the regulation by the commission. The definition of employer was enacted in 1949 when the only remedy under the statute was to file a complaint with the commission. The private cause of action under the statute was not created until 1973. WAC 162-16-160 was not adopted until 1982, 33 years after the statute was enacted and 9 years after the private cause of action was created. WAC 162-16-160. The regulation states the "principal purposes" were to relieve small businesses of a regulatory burden and conserve state resources; however, it does not say these are the *only* legislative purposes. Moreover, the regulation characterizes the definition as an "exemption" from the statute.

It is undoubtedly a greater burden for a small business to respond to a lawsuit seeking enhanced statutory remedies including reasonable attorney fees than to be merely brought before the commission in an administrative proceeding. Amici attorneys for Washington Employment Lawyers Association ably argue a statutory right to obtain an award of reasonable attorney fees against one's adversary is essential to a truly adequate private remedy and serves an important public function as well. Indeed, such a right is extremely valuable and should never be compromised or diminished through an inadequate award; however, by the same token the desirability of such a remedy does not establish its availability where the Legislature has not so provided.

Even if we were to conclude otherwise on the constitutional issue, the remedy of partial invalidation would be unavailable to Griffin unless we also concluded the Legislature would have passed the statute absent the small employer exemption. Otherwise, the proper remedy is complete statutory invalidation rather than changing legislative intent by upsetting the legislative compromise.

*Lynden Transport, Inc. v. State*, 112 Wn.2d 115, 123, 768 P.2d 475, 84 A.L.R.4th 405 (1989); *Leonard v. City of Spokane*, 127 Wn.2d 194, 201, 897 P.2d 358 (1995).

Legislators in other states feared the political repercussions of enacting laws similar to the law against discrimination absent a small employer exemption. *See Robinson v. Fair Employment & Housing Comm'n*, 2 Cal. 4th 226, 825 P.2d 767, 775, 5 Cal. Rptr. 2d 782 (1992); Michael C. Tobriner, *California FEPC*, 16 HASTINGS L.J. 333, 342 (1965); *Armbruster v. Quinn*, 711 F.2d 1332, 1337 n.4, 72 A.L.R.Fed. 504 (6th Cir. 1983) (citing the legislative history of the federal act's employer definition).

 We therefore hold this exemption does not violate constitution article I, section 12.

In view of this disposition we find it unnecessary to address certain other issues raised by Eller. Eller is not entitled to recover reasonable attorney fees on appeal because an award of reasonable attorney fees is not permitted by this statute under these circumstances. The judgment of the trial court is therefore affirmed. Eller shall recover his statutory costs.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, and MADSEN, JJ., concur.

MADSEN, J. (concurring) — For the reasons stated in my dissenting opinion in *Marquis v. City of Spokane*, 130 Wn.2d 97, 922 P.2d 43 (1996), I concur in the majority opinion. My concern, however, is the disparate result which the court has created by reaching a different result here than in *Marquis*.

Without commenting on the propriety of the claim, I wish to point out that Ms. Griffin went forward on a claim for wrongful termination in violation of public policy which the jury ultimately rejected. Although Justice Talmadge criticizes the majority for giving employers the "freedom to discriminate," he overlooks the fact that Ms.

Griffin was permitted to take her claim for discrimination to the jury based on a violation of public policy against discrimination as embodied in RCW 49.60. Jury Instruction No. 8 stated:

In order to find a violation of a clear mandate of public policy it need not be shown that a particular law has been violated, but only that defendant's conduct reasonably appeared to violate the letter or purpose of the law. Plaintiff claims that defendant's conduct reasonably appeared to violate the letter or purpose of the State Law Against Discrimination which prohibits practices of sexual harassment and retaliation in employment.

Jury Instruction No. 9 stated:

The State Law Against Discrimination which prohibits sexual harassment is violated when:

(1) an employee is subjected to harassing conduct of a sexual nature which is unwelcome to her, in that the employee did not solicit or incite the conduct, and the employee regarded the conduct as undesirable or offensive;

(2) the harassing conduct was motivated by gender; and

(3) the harassing conduct affected the terms and conditions of the employee's employment.

Jury Instruction No. 10 stated:

The State Law Against Discrimination which prohibits retaliation is violated when:

(1) the employer knew the employee had opposed or had resisted sexually harassing behavior;

(2) the employer took adverse action against the employee; and

(3) retaliation was a substantial factor motivating the employer's action.

Proximity in time between the opposition or resistance to the sexually harassing behavior and the adverse action is one factor which can be relevant to determining the employer's motivation.

The jury rejected Ms. Griffin's claim. In response to a special verdict, the jury was asked: "Question No. 1: Did the defendant wrongfully terminate the plaintiff's employment in contravention of a clear mandate of public policy?" Clerk's Papers, Special Verdict Form A. The jury answered "no." *Id.* No appeal was taken on this issue.

Whether rightly or not, Ms. Griffin pursued a private cause of action such as the dissent advocated. The difference is that she would not have been entitled to the attorney fees provided in RCW 49.60 had she prevailed.

In fairness, the Legislature should provide a statutory cause of action to redress employment discrimination, whether a worker is a family member, employed by an employer with fewer than eight employees, or is a private contractor. This court, however, is not the body charged with establishing statutory causes of action.

TALMADGE, J. (dissenting) — Washington's Law Against Discrimination, RCW 49.60 (the Act), provides citizens the civil right to be free of invidious discrimination in employment. The Act expressly makes this right enforceable by private action in court, and expressly provides nothing in the Act may be construed to deny the right of any person to bring such a private action. RCW 49.60.020, .030. RCW 49.60.040 and .180 cannot be construed, as does the majority, to deny a private right of action to plaintiff Sharon Griffin for sex discrimination.

The eight-employee threshold (RCW 49.60.040(3)) relates to unfair employment practices (RCW 49.60.180) under the jurisdiction of the Washington Human Rights Commission. RCW 49.60.120(4). It does not deprive all employees in small businesses of protection against discrimination. This conclusion is mandated by the plain words of the statute, its purpose and history, the relevant agency interpretation, our case law, as well as the Washington Constitution. Indeed, the majority deprives large numbers of women and others protected by the Act of their right to be free of employment discrimination on a mere hap-

penstance: they work for an employer of fewer than eight employees. The majority believes employers have "freedom to discriminate." Majority op. at 67 n.1. The people of Washington did not give small employers license to discriminate; nor should this Court. For these reasons, I dissent.

## FACTS

Sharon Griffin worked for some 10 months in 1990-91 as a legal secretary, and the only full-time employee, for attorney Carson Eller. Eller's legal secretaries before Griffin allegedly left his employ due to the rampant sexual undertone of Eller's conduct. Griffin alleges Eller daily made offensive sexual comments to her, relating jokes about prostitutes and descriptions of different races' genitalia. Eller admitted he introduced Griffin to a business associate as "my new nigger." When Griffin returned from her father's funeral, on her birthday, Eller allegedly told her "every woman needs to be big dicked," and, for her birthday present, he was going to photograph her being "big dicked" by his friend. Soon thereafter, he fired her, saying he could not afford her continued employment. Clerk's Papers at 47-57, 70-73, 77-78, 91-93, 133-35, 138-40. Attorney Stephen D. Downing stated in an affidavit he moved out of Eller's offices because he felt his clients and employees should not be subjected to Eller's sexual comments. *Id.* at 140.

Griffin brought suit alleging illegal sex discrimination under RCW 49.60.030 and .180, and various common law claims. The trial court dismissed her sexual discrimination claim, holding the civil action remedy of RCW 49.60.030 is unavailable against an employer of fewer than eight employees pursuant to RCW 49.60.040(3). The jury awarded Griffin $50,000 on her negligent infliction of emotional distress and outrage claims, rejecting wrongful termination and wage claims. Griffin appealed the dis-

missal of her RCW 49.60.030 claim. We granted direct review. RAP 4.2.

## ANALYSIS

A. Statutory Issues

1. There Must be a Remedy for the Civil Right to be Free From Discrimination

RCW 49.60.030(1) declares: "The right to be free from discrimination because of race, creed, color, national origin, sex, or the presence of any sensory, mental, or physical handicap is recognized and declared to be a civil right." More specifically, this civil right includes the "right to obtain and hold employment without discrimination." RCW 49.60.030(1)(a). To this compelling and unambiguous language, the majority, by unfounded interpretation, adds the following proviso: "But, there is no civil right to be free from discrimination by an employer of eight or fewer."

What justification does the majority offer for adding language to the statute? The majority tells us, "The Legislature could well have concluded burdening so many employers to benefit so few employees was not, on balance, of sufficient benefit to offset the burden." Majority op. at 68. The majority appears to believe suppressing the impulse to discriminate places a burden on those running small businesses. I cannot believe very many small business people find it onerously debilitating to avoid discrimination. Nor do I believe the Legislature thought as much when it enacted the Law Against Discrimination.

The majority's interpretation ignores the common law rule ubi jus, ibi remedium — where there is a wrong, there is a remedy. If one has a right, one must have the means by which to vindicate and maintain that right. As this Court said in *Mills v. Orcas Power & Light Co.*, 56 Wn.2d 807, 821, 355 P.2d 781, 62 A.L.R. 1349 (1960), "The foundation of liability is that where there has been an injury, there is a remedy." Chief Justice Marshall said: "The very

essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163, 2 L. Ed. 60 (1803).[2]

But it is not even necessary to imply a private right of action out of whole cloth. The Law Against Discrimination itself prescribes the right: "Nor shall anything herein contained be construed to deny the right to any person to institute any action or pursue any civil or criminal remedy based upon an alleged violation of his or her civil rights." RCW 49.60.020. The majority opinion renders this statutory imperative powerless as to businesses with eight or fewer employees.

2. The Majority Misinterprets the Act

With no analysis of RCW 49.60.020 or .030(1), the majority upholds the eight-employee threshold of RCW 49.60.040(3) for *both* the jurisdiction of the Human Rights Commission and civil actions in court. Under this view, there is no state remedy against discrimination in smaller businesses. The majority finds no historical basis for differentiating between the administrative authority of the Commission and the broader civil right of an employee to be free of discrimination enforceable by a private civil action in court. The majority is simply wrong.

Generally, if statutory language is unambiguous, we enforce the statute as written, and there is no need for judicial interpretation. *State v. McCraw*, 127 Wn.2d 281, 288-89, 898 P.2d 838 (1995). RCW 49.60.020 and .030(1)

---

[2]In the setting of a statutory scheme analogous to our Law Against Discrimination, a federal district court in 1946 found a private right of action present in § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., and in its implementing rule, Rule 10b-5 because the Act created duties for which a remedy was required. *Kardon v. National Gypsum Co.*, 69 F. Supp. 512, 513 (E.D. Pa. 1946). The United States Supreme Court finally agreed in *Superintendent of Ins. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S. Ct. 165, 30 L. Ed. 2d 128 (1971). In similar fashion, this Court should recognize private remedies to supplement the duties and rights set forth in Washington's Law Against Discrimination.

control this case. RCW 49.60.030(1) creates a general civil right to be free from discrimination because of sex, specifically mentioning the right to obtain and hold employment. RCW 49.60.020 provides the right to bring an action or pursue any civil remedy for violation of civil rights may not be impaired:

> Nothing contained in this chapter shall be deemed to repeal any of the provisions of any other law of this state relating to discrimination because of race, color, creed, national origin, sex, marital status, age, or the presence of any sensory, mental or physical disability. . . . *Nor shall anything herein contained be construed to deny the right to any person to institute any action or pursue any civil or criminal remedy based upon an alleged violation of his or her civil rights.*

(Emphasis added.) RCW 49.60.020 also mandates a liberal construction of the Act to accomplish its purposes. *Phillips v. City of Seattle*, 111 Wn.2d 903, 907, 766 P.2d 1099 (1989); *Russell v. Department of Human Rights*, 70 Wn. App. 408, 414, 854 P.2d 1087 (1993), *review denied*, 123 Wn.2d 1011 (1994).

In its brief statutory analysis, the majority starts by addressing RCW 49.60.030(2). RCW 49.60.030(2) lists the types of remedies a court shall provide in a civil action for a violation of the Act:

> Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. § 3601 et seq.).

An "act in violation of this chapter" plainly would include an act in violation of the civil right to be free of discrimination. RCW 49.60.020, .030(1).

The majority ignores RCW 49.60.020, which contains

the Act's own unambiguous rule of construction. It commands in the plainest terms possible nothing else contained in the Act may be construed to deny any person the right to bring a private action to enforce their civil rights: *any* person has the right to institute *any* action to vindicate the civil right to be free of discrimination in employment. Any person injured by a violation of the chapter "shall have a civil action in court." RCW 49.60.030(2). The word "any" ordinarily means "every" and "all"; the word "shall" generally creates a mandatory duty. *State v. Smith*, 117 Wn.2d 263, 271, 814 P.2d 652 (1991). "Any person" includes persons in a workplace with fewer than eight employees.

Nothing in RCW 49.60.020, .030(1) or (2) mentions, incorporates, or references the defined term "employer," or the eight-employee threshold in RCW 49.60.040. The Legislature easily could have limited the civil rights and remedies of sections .020 and .030, but it did not do so. The majority's analysis of RCW 49.60.040(3) and RCW 49.60.180 contradicts the clear mandate of RCW 49.60.020.

Even if we are obliged to construe the terms of RCW 49.60.020 and .030(6) and RCW 49.60.040(3), the majority's analysis fails. A statute must be considered as a whole to ensure all parts of the statutory scheme operate in harmony, and to avoid leaving any language without effect. *State v. Malone*, 106 Wn.2d 607, 610-11, 724 P.2d 364 (1986); *Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 509, 730 P.2d 1327 (1986); *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 314-15, 884 P.2d 920 (1994); *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). The majority does not even attempt harmoniously to construe both RCW 49.60.020 and .030, on one hand, and RCW 49.60.040(3) and .180, on the other. The majority, in fact, adopts Eller's view that RCW 49.60.030 has no operative force at all. Br. of Resp't at 4. "Such a result defies principles of statutory construction, which require us to give effect to all of the language in a statute." *Becker v. Pierce County*, 126 Wn.2d 11, 17, 890 P.2d 1055 (1995).

RCW 49.60.040's eight-employee threshold applies to the term "employer" and excludes those employing fewer than eight employees from the scope of that term. The term "employer" is not used in RCW 49.60.020 or section .030(1) or (2), but does appear in RCW 49.60.180, defining an "unfair employment practice for any employer," to include discrimination in hiring, firing, and employment terms and conditions. The term "unfair practices" also appears in many other sections in the Act, describing in general or specific terms unfair practices in credit, insurance, employment (by employers, labor unions and employment agencies), public accommodations and real estate. *See* RCW 49.60.175, .176, .178, .180 .190, .200 .205, .210, .215, former RCW 49.60.217, .220, .222, .223, .224(2), and .225.

The principal charge to the Commission is to investigate "complaints alleging unfair practices as defined in this chapter." RCW 49.60.120(4). This *limits* the jurisdiction of the Commission to unfair practices.

While the Commission can generally work to eliminate discrimination in our state, by proposing legislation and policies (RCW 49.60.100, .110); adopting regulations (RCW 49.60.120(3); conducting and publishing research, studies, seminars and other intergroup educational activities (RCW 49.60.120(5), (6) and (8)); and creating advisory agencies and conciliation councils to study discrimination and foster goodwill (RCW 49.60.130), its investigative and adjudicatory processes are limited to *unfair practices*.[3]

Thus, the concepts of unfair practices and the general civil right to be free of discrimination play different roles in the Act. "Unfair practices" define the jurisdiction of the Commission in its investigative and adjudicatory re-

---

[3]In general, the term "unfair practices" is consistently used throughout RCW 49.60 in *describing the Commission's adjudicatory practices and procedures. See, e.g.*, RCW 49.60.230 (filing complaint of unfair practice); RCW 49.60.240 (reasonable cause for alleged unfair practices; attempting conciliation); RCW 49.60.250 (failing conciliation, administrative law judge conducts hearing and determines whether respondent engaged in an "unfair practice"); RCW 49.60.260 (failing voluntary compliance, enforcement of Commission or administrative law judge order is by superior court in the county where either the "unfair practice" occurred or where the accused lives or conducts business).

sponsibilities. The Act provides for determination of general complaints of discrimination or violations of civil rights by the private civil and criminal remedies in RCW 49.60.020 and .030. Similarly, RCW 49.60.020 and .030 do not pertain only to unfair practices. The Legislature chose its words carefully to ensure the Commission devotes its limited investigative resources to "unfair practices" by "employers."[4]

The majority's analysis also fails to implement the Legislature's intent in RCW 49.60. If a statute is ambiguous, we interpret the statute to best give effect to legislative intent. *Whatcom County*, 128 Wn.2d at 546; *Wichert v. Cardwell*, 117 Wn.2d 148, 151, 812 P.2d 858 (1991).

We may determine the purpose of a statute by looking to the legislative findings. *State v. Shawn P.*, 122 Wn.2d 553, 561-62, 859 P.2d 1220 (1993); *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 128, 580 P.2d 246 (1978). The purpose of the Act is to prevent discrimination against any person, because such discrimination also threatens the fundamental values of our state:

> It is an exercise of the police power of the state for the protection of the public welfare, health and peace of the people of this state, and in fulfillment of the provisions of the Constitution of this state concerning civil rights. The legislature hereby finds and declares that practices of *discrimination against any of its inhabitants* because of race, creed, color, national origin, families with children, sex, marital status, age, or the presence of any sensory, mental, or physical disability or the use of a trained guide dog or service dog by a disabled person are a matter of state concern, that such discrimination *threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state.*

---

[4]The need to conserve Commission resources is especially acute because the ambit of its responsibility has grown. In 1956, the Commission acted on only 148 complaints, and resolved them all through conciliation. 1957 *Washington Law Review*, "Civil Rights," at 185. In 1973, some 380 complaints were filed with the Commission. In 1974, some 1,370 complaints were filed. James Delman & Linda H. Delman, *RCW 49.60: A Discriminating Look*, 13 Gonz. L. Rev. 190, 198 (1977) (citing 1976 Wash. Human Resources Agencies Rep. 32-33).

RCW 49.60.010 (emphasis added). *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 99, 864 P.2d 937 (1994) (the Act should be interpreted to "further, not frustrate," its intended purpose).

The majority's analysis is squarely at odds with the above legislative declaration that discrimination against *any* inhabitant threatens not only that person's constitutional rights, but the foundations of our society as well.

Finally, an interpretation of a statute producing unlikely, absurd or strained consequences must be avoided. *Timberline*, 125 Wn.2d at 317; *State v. Contreras*, 124 Wn.2d 741, 747, 880 P.2d 1000 (1994). The majority cites Michael C. Tobriner, *California FEPC*, 16 HASTINGS L. J. 333, 342 (1965) for its view a small employer has a license to discriminate because state antidiscrimination laws should not apply where the employment situation "might involve a close personal relationship between employer and employees." The majority believes this concern underlies RCW 49.60.040(3). Majority op. at 67 n.1.

I confess I find it impossible to reconcile the unambiguous intent of the Legislature to declare freedom from racial, sexual, and other invidious discrimination a civil right, with the license to discriminate the majority creates for small employers. Close personal relationships between employers and employees hardly justify discrimination, no matter how egregious or invidious, against employees.

Moreover, the statute's definition of employer does not even support the majority's argument. First, RCW 49.60.040(3) defines employer as any "person" — including individuals, partnerships, associations, corporations, legal representatives, trustees and receivers, as well as government entities. RCW 49.60.040(1). Second, "employer" includes any person "acting in the interest of an employer, directly or indirectly," who employs eight or more persons. RCW 49.60.040(3). Thus, the statute does not require the "employer" to be an individual, to be at the work site, or to have any direct contact or personal association with the

employees.[5] The majority's analysis means the Legislature intended to allow discrimination by a corporation owned by thousands of shareholders, managed from another state, having fewer than eight employees in separate locations in Washington who never meet the managers or owners of the corporation. This makes no sense at all.

The majority's reading of the Act as a license for small employers to discriminate conflicts with the purpose of the Act. The majority leaves hundreds of thousands of Washington employees without a statutory remedy to vindicate the civil right to be free of discrimination in employment. The majority's interpretation means, paradoxically, it is not unlawful for most businesses to discriminate against their employees.[6]

### 3. Legislative History of the Act

A review of the legislative history of the Act confirms the majority construction of the Act is flawed. The Legislature drew a distinction between the Commission's limited jurisdiction and the broader civil right to be free of discrimination. The historical development of a statutory scheme, through a succession of amendments, may illuminate legislative intent. *White v. State*, 49 Wn.2d 716, 722-25, 306 P.2d 230, *appeal dismissed*, 355 U.S. 10, 78 S. Ct. 23, 2 L. Ed. 2d 21 (1957). However, the majority does not undertake analysis of the successive amendments to the Act. The majority merely recites the Act was passed in 1949 and states a private cause of action was created in

---

[5]Under the Commission's rules for counting employees, the necessary eight employees may be employed in distinct business lines and in different locations inside or outside the state. Employees of distinct corporations even can be aggregated, if there is common ownership and they are "managed in common in the area of employment policy and personnel management." WAC 162-16-160(6)-(7). Clearly, these rules are not aimed at furthering any presumed need to maintain the right to discriminate in close personal associations.

[6]In 1992, 75 percent of all Washington businesses employed nine or fewer persons; 17.5 percent of employed persons worked for such establishments. U.S. Bureau of the Census, *County Business Patterns 1992: Washington*, CBP-92-49; majority op. at 68. *See also* Delman & Delman, 13 GONZ. L. REV. at 202 (75 percent of Washington firms employed fewer than five employees in 1977).

1973, finding no distinction in the legislative history of the Act between a private right of action for discrimination and an administrative remedy for defined unfair practices. Majority op. at 63.

The majority compounds its error with unfounded speculation as to the politics of the passage of the Act in 1949, and its frequent amendments in subsequent years. Based purely on conjecture, the majority contends the Legislature would not have passed the Act without exempting small employers. The majority believes the Legislature would have stood idle while the entire civil rights movement in the United States took place. Despite the constitutional changes wrought by Thurgood Marshall and civil rights cases brought by the National Association for the Advancement of Colored People, Rosa Parks' refusal to sit in the back of a Birmingham bus and the resulting strike led by Dr. Martin Luther King, Jr., the desegregation of the schools in Little Rock, the marches on Selma, and Washington, D.C., and sit-ins and voter registration drives throughout the southern United States, the majority appears to believe our Legislature originally would not have enacted or expanded the Act, without the eight-employee exemption. Similarly, in the majority's view, neither the advances wrought by women in America nor the work of disabled people to secure equality would have affected the Legislature. The majority's historical analysis is of doubtful validity.

a. The 1949 Law Against Discrimination in Employment

Originally, the Act aimed only at discrimination in employment, and provided only administrative remedies. LAWS OF 1949, ch. 183 (1949 Act), § 1 (now RCW 49.60.010). The 1949 Act created the Washington State Board Against Discrimination in Employment (Board). 1949 Act, § 4 (RCW 49.60.050). The Board's adjudicatory procedures were tied to complaints of "unfair employment practices" (1949 Act, §§ 7, 8) by "employers," defined, as that term is today defined, with an eight-employee threshold. 1949 Act,

§ 3. The only relief the Board could grant was to dismiss the complaint or issue a cease and desist order. 1949 Act, § 8. The 1949 version of what is now RCW 49.60.120 empowered the Board to determine "complaints alleging discrimination," rather than unfair practices in employment, however. 1949 Act, § 6(f).

The 1949 Act did not create a private right of action to redress discrimination in employment. Thus, originally, RCW 49.60 did not differentiate between the eight-employee threshold and a private right of action for employment discrimination, because no such private right of action was created. At this time, the common law action for discrimination in public accommodations was well established. *Anderson v. Pantages Theater Co.*, 114 Wash. 24, 194 P. 813 (1921). However, the 1949 Act did not create administrative remedies for unfair practices in public accommodations. Accordingly, in the 1949 Act, there was no need for the Legislature to distinguish between administrative remedies for unfair practices and a private action for discrimination.

### b. The 1957 Amendments

In 1957, the Legislature expanded the coverage of the Act to include unfair practices in public accommodations. As a result, the Legislature had to address whether administrative remedies would be coextensive with the already existing private right of action. The Legislature clearly indicated a private right of action for discrimination and administrative remedies for unfair practices were distinct.

The 1957 Legislature made fundamental changes in the Act, broadening its protection to public accommodations and public housing, by adding descriptions of unfair practices in public accommodations and publicly assisted housing. LAWS OF 1957, ch. 37, § 1-27 (1957 Act). Although the 1949 Act already provided that the right to be free from discrimination "is hereby recognized as and declared to be a civil right," 1949 Act, § 2, the Legislature for the first

time in 1957 recognized the existence of a private right of action to redress such discrimination. 1957 Act, § 2, *see Anderson*, 114 Wash. 24. Contrary to the majority's implication, a private right of action against discrimination existed prior to 1973.[7]

Having recognized the private right of action, the Legislature also had to consider whether the availability of administrative relief and the private right of action were coextensive. The 1957 Legislature required an election of civil or administrative remedies, 1957 Act, § 2, and decided that a private right of action to enforce the civil right to be free of discrimination would be broadly available, but administrative remedies would not. The Legislature amended RCW 49.60.120(4) to distinguish between the Act's civil remedy, and the availability of administrative remedies. The 1957 Act struck out the words in RCW 49.60.120(4) tying Board jurisdiction to complaints alleging "discrimination in employment," and inserted instead the words "unfair practices as defined in this act," as follows:

The board shall have the ~~following powers and duties the~~ functions, powers, and duties: . . .

(4) To receive, investigate and pass upon complaints alleging ~~discrimination in employment~~ <u>unfair practices as defined in this act</u> because of race, creed, color or national origin.

1957 Act, § 7 (RCW 49.60.120(4)). This change clearly made

[7]In 1957, the Legislature added the following language to RCW 49.60.020: "Nor shall anything herein contained be construed to deny the right of any person to institute any action or pursue any civil or criminal remedy based upon an alleged violation of his civil rights. However, the election of a person to pursue such a remedy shall preclude him from pursuing those administrative remedies created by this chapter." 1957 Act, § 2. In addition, RCW 49.60.010 and RCW 49.60.030 were amended to reflect the expansion of scope to include places of public accommodation and publicly-assisted housing, and "unfair practices" in such areas where defined. 1957 Act, §§ 1, 3, 14, 15 (RCW 49.60.215; former RCW 49.60.217). The majority does not address the 1957 Act in its opinion, and opines the "creation of a statutory private remedy" for employment discrimination occurred in 1973. Majority op. at 63. The majority cites LAWS OF 1973, ch. 141 for its historical analysis. A careful reading of LAWS OF 1973, ch. 141, § 2 reveals the Legislature amended RCW 49.60.030 to allow injunctive relief under the Act and award reasonable attorney fees to successful litigants.

the Board's enforcement authority *narrower* than the private action remedy against discrimination, and indicated definitions of unfair practices would not be used to limit the availability of private rights of action for discrimination. *See also* RCW 49.60.020 (1957 Act, § 2) ("Nor shall anything herein contained be construed to deny the right of any person to institute any action or pursue any civil or criminal remedy based upon an alleged violation of his civil rights").

Thus, when the Legislature first recognized private rights of action under the Act, it carefully distinguished an "unfair practice" from acts of discrimination. It distinguished between the general civil right to be free of discrimination (enforceable through private actions) in certain areas, and the pre-existing provisions restricting Board jurisdiction to complaints of "unfair practices" by "employers," i.e., businesses with at least eight employees.

### c. Subsequent Amendments

Subsequent amendments to the Act support the conclusion RCW 49.60.020 and .030 define substantive rights on a broad basis, while the Commission's role is limited to unfair practices. In 1973, the Legislature added language to RCW 49.60.030(2) establishing private statutory actions to enforce the civil right to be free of discrimination in any of the areas mentioned in RCW 49.60.030(1) or .020, including employment. LAWS OF 1973, ch. 141, § 3(2) provided:

> Any person deeming himself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, to recover the actual damages sustained by him, or both, together with the cost of suit including a reasonable attorney's fees [sic] or any other remedy authorized by this chapter or the United States Civil Rights Act of 1964; . . .

When the Legislature provided a statutory basis for private actions, it did not restrict such actions to com-

plaints or allegations of "unfair practices as defined in this act," as it had when referring to Board jurisdiction in 1957. 1957 Act, § 7; RCW 49.60.120(4). Instead, it made statutory private actions available for those complaining of "any act in violation of this chapter." The choice of the words "any act in violation of this chapter" rather than "unfair practices as defined in this act" was deliberate and meant the Legislature intended to open the courts more generally to discrimination complaints.

In the same 1973 legislation, the election of remedies provision of RCW 49.60.020 was deleted. LAWS OF 1973, ch. 141, § 2. Clearly, these amendments were intended to broaden the forms of relief available to victims of discrimination.

Since 1969, the Legislature has broadened the Act by adding protection against discrimination based upon sex, physical disabilities, and other attributes, and by barring discrimination in real estate generally (rather than just publicly assisted housing), in credit and in insurance transactions. In each case, the Legislature has added parallel provisions defining the relevant "unfair practices."[8] These changes are necessary under RCW 49.60.120(4) to expand Commission jurisdiction to the new areas. These changes would not be necessary if the Legislature did not distinguish between the availability of

---

[8]LAWS OF 1969, 1st Ex. Sess., ch. 167, §§ 2, 3 (amending RCW 49.60.030, .040 to refer to real estate transactions); *id.* §§ 4-6 (RCW 49.60.222, .223, .224, .225, unfair real estate practices); LAWS OF 1971, 1st Ex. Sess., ch. 81, §§ 1-5 (sex); LAWS OF 1973, ch. 141, § 1 (amending RCW 49.60.010 to include credit and insurance); *id.* § 3 (amending RCW 49.60.030 to include discrimination based upon sex, and credit and insurance); *id.* § 4 (amending RCW 49.60.040 to define "credit transactions"); *id.* § 5 (RCW 49.60.176, unfair credit practices); *id.* § 6 (RCW 49.60.178, unfair insurance practices); *id.* § 9 (RCW 49.60.175, unfair practices in credit applications); LAWS OF 1973, 1st Ex. Sess., ch. 214, § 1 (RCW 49.60.010) (handicap); LAWS OF 1974, 1st Ex. Sess., ch. 32, §§ 1-2 (amending RCW 49.60.030(1) to permit certain insurance rate differentials based on gender); LAWS OF 1979, ch. 127, §§ 1-11 (sensory, mental, or physical handicap); LAWS OF 1985, ch. 90, §§ 1-6, (physically disabled with service dog); LAWS OF 1985, ch. 203, §§ 1-2, (RCW 49.60.215, sex discrimination in public places); LAWS OF 1988, ch. 206, §§ 902-03 (RCW 49.60.172, .174) (unfair practices with respect to HIV infection); LAWS OF 1989, ch. 61, § 1, (RCW 49.60.222, physically disabled with service dog discrimination in real estate transactions); LAWS OF 1993, ch. 69, §§ 1-6, 9 (RCW 49.60.30, families with children).

administrative remedies for unfair practices only, and the scope of the underlying right to be free of discrimination, enforced by a private right of action, under RCW 49.60.030(2). These amendments further demonstrate the Legislature's distinction between unfair practices and the more general civil right to be free of discrimination.

In sum, the legislative history of RCW 49.60 demonstrates a careful legislative decision to provide a broadly available *civil action remedy* for discrimination, while providing a narrower *administrative remedy* for unfair practices in employment.

4. Administrative Interpretation and Legislative Acquiescence

The majority gives no attention to the Commission's interpretation of the eight-employee threshold in RCW 49.60.040. Ordinarily, we give great weight to the interpretation given a statute by the agency charged with its enforcement. *Holland v. Boeing Co.*, 90 Wn.2d 384, 389, 583 P.2d 621 (1978); *Washington Water Power Co. v. Human Rights Comm'n*, 91 Wn.2d 62, 68-69, 586 P.2d 1149 (1978); *ARCO Prods. Co. v. Utilities & Transp. Comm'n*, 125 Wn.2d 805, 810, 888 P.2d 728 (1995).

Since 1982, Commission regulations have provided the eight-employee threshold relates *only* to the Commission's jurisdiction, and persons have a general civil right to be free of discrimination enforceable by private action under RCW 49.60.030, regardless of whether that person may also complain of an unfair practice. WAC 162-16-160 states the exemption of smaller businesses from the definition of employer merely relates to the enforcement authority of the Commission:

(2) Purposes of exemption. The principal purposes of exempting persons who employ less than eight from the enforcement authority of the commission are:

(a) To relieve small businesses of a regulatory burden; and

(b) in the interest of cost effectiveness, to confine public

agency enforcement of the law to employers whose practices affect a substantial number of persons.

WAC 162-16-160.[9] In the Commission's view, the exemption only confines public agency enforcement of the law, and does not restrict the scope of the law itself. We previously have agreed with the Commission's interpretation of the small business provision. *Bennett v. Hardy*, 113 Wn.2d 912, 928-29, 784 P.2d 1258 (1990).

WAC 162-16-160 is entirely consistent with the Commission's long-standing conception of its role in enforcing Washington's antidiscrimination law:

> A court confines its judgment to the parties before it, and it seeks to resolve in a single action the entire dispute between them. *The commission was not designed to compete with the courts as a forum for the vindication of private rights; its task is to work for the public good of eliminating and preventing discrimination. If the commission were obligated to dispose of every contention between a complainant and respondent arising out of the alleged discrimination, then its resources would be diverted from this central task.* RCW 49.60.020 preserves the civil and criminal remedies of a person who has filed a complaint under the law against discrimination, and RCW 49.60.030 authorizes suits directly in court, in order to free the commission to work for the remedy best designed to eliminate and prevent discrimination.

WAC 162-08-061(2) (emphasis added). The court agreed with this view in *Mattox v. Washington State Bd. Against Discrimination*, 13 Wn. App. 406, 410, 535 P.2d 470 (1975).

Moreover, the Legislature has acquiesced in the Board's interpretation of the eight-employee threshold. When the Legislature has repeatedly amended the statute without rejecting the agency's interpretation, the agency interpretation of the statute is even more persuasive:

---

[9]Another regulation, WAC 162-16-170, also adopted in 1982, provides independent contractors not entitled to protection under RCW 49.60.180 nonetheless may enforce by private action their independent general civil right under RCW 49.60.030 to be free of discrimination. WAC 162-16-170. We agreed with this interpretation in *Marquis v. City of Spokane*, 130 Wn.2d 97, 922 P.2d 43 (1996).

When a statute is ambiguous, the construction placed upon it by the officer or department charged with its administration, while not binding on the courts, is entitled to considerable weight in determining the intention of the legislature; and the persuasive force of such interpretation is strengthened when the legislature, by its failure to amend the statute, silently acquiesces in the administrative interpretation. This is particularly true when, as here, the section is subsequently (1) considered by the legislature, (2) amended in some other particular, and (3) the administrative construction of the section is not repudiated.

*White v. State*, 49 Wn.2d 716, 725, 306 P.2d 230 (citing *State ex rel. Pirak v. Schoettler*, 45 Wn.2d 367, 274 P.2d 852 (1954)), *appeal dismissed*, 355 U.S. 10, 78 S. Ct. 23, 2 L. Ed. 2d 21 (1957); *Paulsell v. Peters*, 9 Wn.2d 599, 115 P.2d 708 (1941).

Since 1982, the Legislature has amended the Act dozens of times, affecting the pertinent statutory provisions at issue in this case.[10] In this period, the Legislature also twice enacted sunset legislation that would have terminated the

---

[10]The Legislature amended RCW 49.60.010 in 1985 to refer to the "commission" instead of the "board," LAWS OF 1985, ch. 185, § 1; *see also* LAWS OF 1993, ch. 510, § 1 (adding physical disabilities); LAWS OF 1995, ch. 259, § 1 (adding families with children). The Legislature amended RCW 49.60.020 in 1993 to refer to physical disabilities, LAWS OF 1993, ch. 510, § 2. It amended RCW 49.60.030 once in 1984 (to refer to health maintenance organizations, LAWS OF 1984, ch. 32, § 1); twice in 1993 (to add attorneys' fees and refer to physical disability, LAWS OF 1993, ch. 69, § 1 and ch. 510, § 3); and a fourth time in 1995 (to refer to the Federal Fair Housing Amendments Act, LAWS OF 1995, ch. 135, § 3). The Legislature amended RCW 49.60.040 twice in 1985, to define "commission," LAWS OF 1985, ch. 185, § 2, and to define "sex," LAWS OF 1985, ch. 203, § 2. The Legislature amended this section, in several respects, a third time in 1993 (LAWS OF 1993, ch. 69, § 3; ch. 510, § 4) and again in 1995 (LAWS OF 1995, ch. 259, § 2). The Legislature amended RCW 49.60.050 in 1985 to change the name of the agency from the "board" to the "commission." LAWS OF 1985, ch 185, § 3. The Legislature amended RCW 49.60.120, the section defining commission powers, in 1985, both to refer to a "commission" rather than a "board," and to add subsection (7) permitting the Commission to cooperate with other governmental entities but only in investigations of allegations that would constitute unfair practices as defined under the chapter. LAWS OF 1985, ch. 185, § 10. The Legislature revisited RCW 49.60.120 in 1993 to refer to physical disability, LAWS OF 1993, ch. 69, § 4, and to specifically allow cooperation with Washington agencies, LAWS OF 1993, ch. 510, § 6. The Legislature amended RCW 49.60.180 in 1985 to reflect the change to a commission, LAWS OF 1985, ch. 185, § 16, and again in 1993, to refer to physical disabilities, LAWS OF 1993, ch. 510, § 12.

Commission. LAWS OF 1985, ch. 185, § 31 (termination in 1989); LAWS OF 1988, ch. 288, § 9 (termination in 1996). In 1994, the Legislature repealed a sunset date for the Commission. LAWS OF 1994, ch. 126, § 1. Yet, the Legislature *never rejected* the Commission's rule providing its authority was narrower than the scope of the civil remedy for discrimination. WAC 162-16-160. Despite a 14-year track record of frequent and intense legislative scrutiny of the Act, and the powers, duties and very existence of the Commission, the Legislature chose not to correct the Commission's interpretation of the relationship between its own jurisdiction and the civil remedy to sue for discrimination. It is difficult to imagine a stronger case for legislative acquiescence.

The majority claims WAC 162-16-160 does not merit attention because the regulation was not adopted contemporaneously with passage of the Act in 1949 or the alleged creation of the private right of action in 1973. Majority op. at 69. An agency's interpretation of a regulation need not be contemporaneous with passage of the authorizing legislation. The reason for deference to an agency interpretation is the expertise of the agency, which is not lost over time. A regulation interpreting a statute for the first time has legal force, no matter when promulgated. Nothing in RCW 34.05 requires an agency to adopt a regulation before the expiration of some unspecified deadline following the enactment of a statute. Moreover, the presumption the Legislature would have rejected a faulty agency interpretation when amending a statute in other particulars is just as strong, no matter when the agency's interpretation was promulgated.

The Commission's regulations serve as additional authority for the view the eight-employee threshold applies only to the authority of the Commission and not to substantive rights or private causes of action under RCW 49.60.030. The Legislature has, by its acquiescence, adopted the Commission's interpretations as its own.

5. Case Law Interpreting the Act

Our cases confirm that regardless of whether one may assert an unfair employment practice by an employer under RCW 49.60.180, there is a general civil right to be free of discrimination enforceable by private action under RCW 49.60.020 and .030. In *Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 626, 911 P.2d 1319, 1322 (1996), we stated RCW 49.60.030 generally bans discrimination, and provides a right to be free from discrimination. *See also Darrin v. Gould*, 85 Wn.2d 859, 864, 870, 540 P.2d 882 (1975) (sex discrimination in a public accommodation in an educational institution was forbidden by RCW 49.60.010 and .030); *Human Rights Comm'n ex rel. Spangenberg v. Cheney Sch. Dist. No. 30*, 97 Wn.2d 118, 124, 641 P.2d 163 (1982) (victim of age discrimination may seek relief under RCW 49.60.030). In *Blair v. Washington State Univ.*, 108 Wn.2d 558, 565, 740 P.2d 1379 (1987), we found sex discrimination in a public athletics program was unlawful under RCW 49.60.030(1)(b) and WASH. CONST. art. XXXI. At the relevant time in both *Blair* and *Darrin*, sex discrimination was not included in RCW 49.60.215, the provision defining unfair practices in places of public accommodation. Accordingly, the only statutory basis for the claims was RCW 49.60.030.

Moreover, we have indicated a civil remedy for discrimination may exist notwithstanding limiting definitions in RCW 49.60.040. In *Bennett v. Hardy*, 113 Wn.2d 912, 784 P.2d 1258 (1990), we held a private action for age discrimination may be implied under RCW 49.44.090 and was not limited by the definition of employer in RCW 49.60.040. *Bennett* confirms the distinction between the underlying existence of civil rights and the broad availability of private remedies in court, as opposed to the more limited availability of an administrative remedy. *Bennett*, 113 Wn.2d at 928-29. The private right of action for age discrimination in *Bennett* is inconsistent with the view that RCW 49.60.040 and RCW 49.60.180 provide smaller employers a license to discriminate.

In *Marquis*, we held there is a general right to bring a private action under RCW 49.60, independent of the availability of administrative remedies for unfair practices. Marquis asserted a claim under RCW 49.60.030 for sex discrimination in the negotiation and performance of a contract for services, even though she was an independent contractor and not an employee within the meaning of RCW 49.60.040. We relied on the legislative purpose to eliminate discrimination, the requirement of liberal construction, RCW 49.60.010, .020, the strong policy against sex discrimination evidenced by our Equal Rights Amendment, WASH CONST. art. XXXI (amend. 61) (ERA), and the agency interpretation of RCW 49.60.030 in WAC 162-16-170, to allow Marquis a private cause of action under RCW 49.60.030.

The majority states, "[u]nlike *Marquis*, . . . we are here addressing the issue of a statutory exemption for small employers rather than statutory silence as to independent contractors." Majority op. at 63. This distinction glosses over the reasoning of *Marquis*. There, our conclusion an independent contractor may bring suit under RCW 49.60.030 for discrimination necessarily rested on two statutory conclusions. First, there is a general civil right to be free of discrimination (RCW 49.60.020, .030(1)), enforceable by private action (RCW 49.60.030(2)), regardless of the availability of administrative relief (RCW 49.60.120(4)). Second, that right extends to an independent contractor, although not specifically mentioned in RCW 49.60.030(1). The first of these conclusions controls the instant case; Griffin has the same general right to sue in court for discrimination as Marquis, even though neither woman may allege an unfair practice or resort to the administrative remedies.

The majority cites *Farnam v. CRISTA Ministries*, 116 Wn.2d 659, 807 P.2d 830 (1991), as the broadest support for its interpretation of RCW 49.60.040. There, we affirmed the trial court's "conclusion that because CRISTA is a religious organization, it is exempt from Washington's

antidiscrimination laws." *Id.* at 672. This statutory exemption finds its roots in the First Amendment to the United States Constitution. *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos,* 483 U.S. 327, 107 S. Ct. 2862, 97 L. Ed. 2d 273 (1987). In the present case, there is no constitutional basis for a small business license to discriminate.

The majority cites as persuasive authority a case it calls "strikingly similar" to the case at bar. Majority op. at 67. In *Brown v. Ford,* 905 P.2d 223 (Okla. 1995), the Oklahoma Supreme Court construed Oklahoma's employment discrimination statute when a legal secretary sued her attorney employer for sexual harassment. Oklahoma law prohibits "discriminatory practices" by employers, as defined in OKLA. STAT. ANN. tit. 25, § 1301 (West 1987). Such "discriminatory practices" are under the purview of a Human Rights Commission, which has the power to "pass upon complaints involving violation" of the state statutes forbidding "discriminatory practices" in Oklahoma. *Id.* at § 1501(3). Because the Oklahoma legislature defined employer to mean 15 or more persons, the court rejected the plaintiff's claim. *Id.* at § 1301(1). Four of the nine justices on the Oklahoma Supreme Court dissented.

This case, rather than supporting the majority, in fact highlights the distinction our Law Against Discrimination makes between the general statutory declaration embodied in RCW 49.60.030(1) of a civil *right* to be free from discrimination, and the more specific administrative *remedy* RCW 49.60.180 creates for "unfair practices" by employers. Oklahoma has no free-standing declaration of a civil right to be free from discrimination. Rather, its statutory law merely incorporates by reference several of the federal civil rights statutes.[11] Thus, the case the majority cites simply stands for the proposition that, in the

---

[11]"The general purposes of this act [Section 1101 et seq. of this title] are to provide for execution within the state of the policies embodied in the federal Civil Rights Act of 1964, the federal Age Discrimination in Employment Act of

absence of a general Oklahoma law against discrimination, Oklahoma statutory law provides only an administrative remedy pursuant to the statutory definition of an employer. Washington's statutory scheme also provides an administrative remedy against employers of eight or more, but goes further to provide a private right of action against any employer who discriminates invidiously.

In summary, the majority's analysis cannot be reconciled with our interpretation of RCW 49.60.030 in *Marquis*. The eight-employee threshold of RCW 49.60.040(3) applies to "unfair practices," not to the civil right to be free of discrimination enforced by a private action in court. RCW 49.60.030(2).

### B. Constitutional Issues

If the majority is correct and the eight-employee threshold of RCW 49.60.040 cuts off administrative remedies under RCW 49.60 and the civil action remedy of RCW 49.60.030, then RCW 49.60.040(3) is unconstitutional although statutes should be construed to avoid constitutional difficulties when such construction is consistent with the purposes of the statute. *In re Williams*, 121 Wn.2d 655, 665, 853 P.2d 444 (1993); *State ex rel. Faulk v. CSG Job Ctr.*, 117 Wn.2d 493, 500, 816 P.2d 725 (1991); *In re Chorney*, 64 Wn. App. 469, 477, 825 P.2d 330 (1992). The majority's interpretation of the Act creates two classes of women employees: those in larger work places, who are protected from discrimination, who may vindicate their civil right to be free of discrimination through administrative remedies or private actions; and those in smaller businesses, who have no right at all to be free of discrimination.

The majority finds this classification constitutional under the federal Equal Protection Clause of the Fourteenth Amendment, avoiding any state constitutional analysis. Majority op. at 65-70. Ordinarily, we employ a

1967, and Section 504 of the federal Rehabilitation Act of 1973 to make uniform the law of those states which enact this act."

state constitutional analysis before considering federal constitutional arguments. *State v. Johnson*, 128 Wn.2d 431, 433, 909 P.2d 293 (1996); *State v. Hendrickson*, 129 Wn.2d 61, 917 P.2d 563 (1996).

Griffin did not argue the ERA provides her a right to sue for sex discrimination, relying instead on an equal protection analysis. However, we cannot avoid the mandate of the ERA. This Court has the inherent authority to reach constitutional issues that determine a case. *City of Seattle v. McCready*, 123 Wn.2d 260, 269, 868 P.2d 134 (1994); *Hanson v. City of Snohomish*, 121 Wn.2d 552, 557, 852 P.2d 295 (1993).

The ERA provides: "Equality of rights and responsibility under the law shall not be denied or abridged on account of sex." WASH. CONST. art. XXXI, § 1. This Court has repeatedly indicated the protections afforded by the ERA go beyond those of the federal Equal Protection Clause and the privileges and immunities clause of the Washington Constitution. *State v. Brayman*, 110 Wn.2d 183, 200-01, 751 P.2d 294 (1988); *Darrin*, 85 Wn.2d at 871. Specifically, we have indicated our former equal protection approach to gender-based discrimination claims no longer applies, and has been "swept away by the equal rights amendment." *Marchioro v. Chaney*, 90 Wn.2d 298, 305, 582 P.2d 487 (1978), *aff'd*, 442 U.S. 191, 99 S. Ct. 2243, 60 L. Ed. 2d 816 (1979). Thus, *under the ERA, if equality is restricted or denied on account of sex, the classification violates the ERA. Marchioro*, 90 Wn.2d at 305.

In the present case, there is no question the conduct at issue is alleged to be discriminatory. Equality on the basis of sex is not upheld if the Act provides no remedy whatsoever for sex discrimination for women employed in small businesses, the majority of all businesses in the state. A woman's remedy for sex discrimination should not depend on the mere happenstance the discriminatory employer employs fewer than eight employees. The classification

the majority establishes therefore violates the ERA, and cannot stand.[12]

## CONCLUSION

The majority diminishes protection for women against sex discrimination, no matter how egregious. A woman who suffers sex discrimination at the hands of an employer of fewer than eight employees is denied any protection under state law from such discrimination either by a statutory civil remedy in court or by administrative action. This result, based on the pure fortuity of the size of the employer, is absurd in light of the powerful language of RCW 49.60.030(1) declaring freedom from discrimination a civil right, the Act's statutory and regulatory scheme, legislative history, administrative interpretation, and our own interpretation of the Act in *Marquis*. Even if the majority's analysis of RCW 49.60.040(3) is appropriate, the statute is unconstitutional under the State's ERA.

The majority's opinion has significant implications for the other protected classes under RCW 49.60 as well. For example, an employer could engage in discriminatory conduct against an African-American male employee based on race and, under the majority's analysis, that African-American employee would have absolutely no statutory remedy under Washington law for such discrimination. I do not believe the Legislature intended to deprive the courts of jurisdiction over cases of invidious discrimination by small employers.

---

[12]Even if we use a traditional equal protection analysis, the eight-employee threshold fails. The majority believes the classification with which we are dealing here is a *classification of employers*. In fact, the real classification for equal protection analysis are women who are the victims of sex discrimination by an employer with eight employees or more, and women who are victims of sex discrimination by an employer of fewer than eight employees. This classification fails under both the strict scrutiny and rational basis standards. *See Macias v. Department of Labor & Indus.*, 100 Wn.2d 263, 668 P.2d 1278 (1983) (statute barring coverage under Washington's Industrial Insurance Act for employees who did not earn $150 in a calendar year violates equal protection because of its disparate impact on Hispanic farm workers and its adverse effect on the fundamental right to travel; court rejected the employers' argument the exclusion of those earning $150 or less a year was necessary because of the additional administrative burden on employers).

We should not contradict the intent of the Legislature and give small employers a license to discriminate against nearly 18 percent of Washington's work force. We should not condemn employees who are women, minorities, or disabled to live without the civil right to be free of discrimination so boldly proclaimed in RCW 49.60.010.

ALEXANDER, J., concurs with TALMADGE, J.

Reconsideration denied October 14, 1996.